606 A.2d 1276

Eric and Leon KORNGOLD, Appellants,

v.

ZONING BOARD OF ADJUSTMENT OF the CITY OF PHILADELPHIA and the City of Philadelphia, Appellees (Two Cases).

REAGAN NATIONAL ADVERTISING, INC., Appellant,

v.

ZONING BOARD OF ADJUSTMENT and City of Philadelphia, Appellees (Four Cases).

Eric and Leon KORNGOLD

v.

ZONING BOARD OF ADJUSTMENT and City of Philadelphia.

Appeal of REAGAN NATIONAL ADVERTISING, INC.

Commonwealth Court of Pennsylvania.

Argued March 2, 1992.

Decided April 6, 1992.

Roger F. Cox, for appellants Eric and Leon Korngold.

Carl K. Zucker, for appellants Reagan Nat. Advertising, Inc..

James J. McHugh, Jr., for appellees.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

This case involves two consolidated appeals from five separate orders of the Court of Common Pleas of Philadelphia County. The first appeal involves Eric and Leon Korngold (Korngolds) who appeal from an order of the trial court dated October 19, 1990, at May Term, 1989, No. 6161. That order sustained their appeal and granted their zoning permit application to reconstruct a non-accessory, outdoor advertising sign on their property located at 2905 East Ontario Street (Korngold Sign G), subject to the condition that the sign not be constructed unless and until the Zoning Board of Adjustment of the City of Philadelphia's (ZBA) decision to revoke the permit for another outdoor advertising sign (Mueller Sign F) in the appeal of *Reagan National*

*Advertising, Inc. v. Zoning Board of Adjustment, et al.,* C.C.P., May Term, 1989, No. 7269, was affirmed and became final.

The Korngolds also appeal from a second order of the trial court at May Term, 1989, No. 6162, dated October 25, 1990, which denied their appeal from the refusal by the Department of Licenses and Inspections (L & I) to erect and replace their nonconforming, non-accessory outdoor advertising sign on their property located at 3400–3412 East Allen Street (Korngold Sign C).

The second appeal by Reagan National Advertising, Inc., (Reagan) involves three orders from the Court of Common Pleas of Philadelphia County. Reagan appeals from an order dated October 19, 1990, at May Term, 1989, Nos. 7269 and 7270, in which the trial court affirmed the decision of the ZBA to revoke two zoning permits issued in error to Reagan by L & I for the construction of two non-accessory, outdoor advertising signs on properties located at 2948 East Ontario Street owned by Norman Mueller (Mueller Sign F) and 3375 Richmond Street owned by JECA Corporation (JECA Sign B). Reagan also cross appeals from the order of the trial court dated October 19, 1990, at May Term, 1989, No. 7271, which affirmed the ZBA's decision to grant the Korngolds a zoning permit to reconstruct Sign G subject to the removal of Mueller's Sign F.

Additionally, Reagan appeals from an order dated May 1, 1990, at May Term, 1989, Nos. 7270, 7271, 7269, 6161 and 6162, in which the trial court denied Reagan's motion to enlarge the record.

## A. Case History

The Korngolds are in the business of manufacturing and warehousing burlap bags. They own two buildings in which they conduct their business which are located at 2905 East Ontario Street, east of Interstate 95 (I–95), and 3400–3412 East Allen Street, west of I–95. These properties are the subject of their appeal. For almost twenty years, the Korngolds leased space for non-accessory rooftop advertis-

ing Signs G and C on these respective properties. The zoning permits for both of these signs were originally secured in 1969 on behalf of the Korngolds by Landau Outdoor Advertising, Inc., who leased the advertising space from the Korngolds. As lessee, Landau owned the signs and was responsible for maintaining the structures. Eventually, Rollins Outdoor Advertising, Inc. replaced Landau as lessee of those advertising spaces. In February of 1980, Reagan became successor to the renewal leases entered into by the Korngolds and Rollins. Pursuant to the lease agreement between the Korngolds and Reagan, Reagan remained owner of those signs and was entitled to remove them at its own expense within sixty days following the termination of the agreement or any renewal of the agreement.

Reagan and the Korngolds were unable to agree upon terms for the renewal of the respective leases. Reagan then secured leases for two outdoor advertising signs with the JECA Corporation and Norman Mueller to replace the Korngolds' leases. On August 3, 1988, Reagan filed applications for permits for the erection of two outdoor advertising signs on properties owned by JECA and Mueller. The JECA property, on which Sign B was to be erected, was located at 3375 Richmond Street, west of I–95. The Mueller property, on which Sign F was to be erected, was located at 2948 East Ontario Street, east of I–95. On August 11, 1988, L & I issued zoning and use permits allowing for advertising signs at both locations.

During the weekend of October 15 and 16, 1988, without the Korngolds' knowledge or consent, Reagan dismantled and removed both of the Korngolds' signs, including the superstructures. Subsequently, on October 17, 1988, Reagan filed applications for permits for the removal of these signs and received zoning and demolition permits the following day. Mueller's Sign F and JECA's Sign B were then erected.

The Korngolds became aware that their signs had been removed on October 17, 1988, and filed zoning applications for permits to replace the signs on that same day. On

December 12, 1988, L & I refused their applications on the basis that the signs were within 500 feet of other outdoor advertising signs in violation of Section 14–1604(2)(a)(1) of the Philadelphia Code (Code). The Korngolds appealed L & I's refusal to the ZBA, as well as L & I's issuance of permits to Reagan for JECA's Sign B and Mueller's Sign F. The ZBA reinstated the Korngolds' permit for Sign G, but only upon the condition that their decision became final regarding Mueller's Sign F and that sign was removed. The ZBA reasoned that once Sign F was removed, no other sign was within 500 feet of the Korngolds' Sign G.

The ZBA, however, refused to reinstate the Korngolds' permit for Sign C, even though that sign had been erected as a lawful nonconforming use because it was within 500 feet of another outdoor advertising sign located at 2820 East Tioga Street (Steen Sign D). The ZBA further determined that Section 14–104(6)(c) of the Code,[1] which governs the reconstruction of demolished nonconforming structures, afforded the Korngolds no relief because Reagan's removal of Korngolds' Sign C constituted a complete demolition, and reconstruction had to conform to all applicable dimensional, area and use requirements.

The ZBA also determined that L & I had erred in issuing a permit to Reagan for Mueller's Sign F, because that sign was within 500 feet of another previously-existing sign at 2901 East Westmoreland Street (Steen Sign E). Additionally, the ZBA determined that L & I had erred in issuing a permit to Reagan for JECA's Sign B, because that sign was within 500 feet of a previously-existing sign on the same side of I–95 (Krain Sign A).

1. Section 14–104(6)(c) of the Code provides the following:
   *Where a structure or any portion thereof is demolished other than by fire, Act of God or under legal condemnation, it shall be rebuilt only in accordance with the area, height, floor area and bulk regulations of the district in which it is located;* provided, that where such demolition constitutes two-thirds or more of the gross floor area of the structure, it shall, upon reconstruction, *conform to the use regulations of the district in which it is located.* (Emphasis added.)

Both the Korngolds and Reagan appealed the ZBA's decisions to the trial court, which after consolidation of appeals, affirmed the ZBA's decisions. The Korngolds then filed an appeal with this court from the trial court's conditional reinstatement of the permit for Sign G and for its refusal to reinstate a permit for Sign C. Reagan also filed an appeal with this court from the trial court's revocation of permits issued for erection of Mueller's Sign F and JECA's Sign B, from the conditional reinstatement of the permit for Sign G, and from the trial court's denial of its motion to enlarge the record.

### B. Reagan's Appeal

We turn our attention first to Reagan's appeal regarding the revocation of the permits issued to him for the erection of Mueller's Sign F and JECA's Sign B. Reagan argues that the permits were properly issued and should not have been revoked, because both signs were more than 500 feet from another outdoor advertising sign on the same side of the street in compliance with Section 14–1604(2)(a)(1) of the Code.

Section 14–1604(2)(a)(1) of the Code provides the following spacing requirements:

Outdoor advertising signs and non-accessory signs *shall not be permitted within 500 feet of any other outdoor advertising sign on the same side of the right-of-way line;* provided, that this spacing requirement shall not apply to on-premises or accessory signs, public service signs, highway directional signs, or any outdoor advertising sign which is within the 660 foot boundary, whose advertising message is not principally visible nor intended to be visible to those limited access highways, bridges, or bridge approachways. (Emphasis added.)

However, the uncontroverted testimony and plans presented by Albert Tantala, a professional civil engineer, indicated that the permits for Signs F and B were erroneously issued because they were within 500 feet of previously existing signs. Specifically, Tantala's plans indicated that the west-

ern face of Sign F was 155 feet from the western face of Korngolds' then-existing Sign G, and the eastern face of Sign F was 117 feet from the eastern face of Sign G. Tantala's plans also indicated that the eastern face of Sign F was 491 feet from the eastern face of Steen's Sign E. Additionally, Sign B was 492 feet from Krain's Sign A. Based on this evidence, the Board determined that the permits should not have been issued.

■ Determinations as to the credibility of witnesses and the weight of the evidence are solely for the Zoning Board in the performance of its fact-finding function. *Borough of Youngsville v. Zoning Board of Borough of Youngsville,* 69 Pa.Commonwealth Ct. 282, 450 A.2d 1086 (1982). Because Reagan presented no evidence to refute Tantala's conclusions regarding the spacing of the signs, and the evidence of record indicates that Reagan's signs were in violation of Section 14–1604(2)(a)(1) of the Code, the ZBA properly revoked Reagan's permits.[2]

■ Reagan also argues that even if Signs F and B were erroneously issued, the ZBA lacked enforcement powers to revoke the permits because that power is delegated to L & I. While we agree that L & I is delegated with enforcement powers, *In re Leopardi,* 516 Pa. 115, 532 A.2d 311 (1987),

**2.** Reagan also contends that the Korngolds had no standing to appeal to the ZBA because they are not aggrieved persons pursuant to Section 14–1705(1) of the Code which allows appeals to the ZBA by any person aggrieved by any decision of L & I. Specifically, Reagan argues that the Korngolds were party to the lease agreement giving Reagan the right to terminate the leases and remove the signs, and they received payment for the duration of the leases. However, the ZBA found that the issuance of permits for placement of Mueller's Sign F and JECA's Sign B within 500 feet of the Korngolds' existing Signs G and C would affect the value of the Korngolds' property, and for that reason, the Korngolds were aggrieved. We note that even if the Korngolds' property was not monetarily effected by Reagan's signs, the Korngolds would still be considered aggrieved persons because they are property owners in close proximity to the land involved in Korngolds' permit applications for which dispensation has been sought before the ZBA. *See Cohen v. Zoning Board of Adjustment of the City of Pittsburgh,* 53 Pa.Commonwealth Ct. 311, 417 A.2d 852 (1980); *Seeherman v. Wilkes–Barre City Zoning Hearing Board,* 42 Pa.Commonwealth Ct. 175, 400 A.2d 1334 (1979).

the ZBA did not usurp that power because it merely revoked the permits and did not order the removal of the signs. The October 19, 1990 order of the ZBA granting the Korngolds a permit for Sign G only stated that "the Korngolds *will be entitled to replace the sign (G) once the Reagan National sign (F) is removed.* As L & I erred in granting Reagan National the permit to erect their sign to begin with, the Korngolds should and would have been permitted to replace the sign *upon its removal by Reagan.*" In support of the ZBA's authority to order the revocation of the permit, Section 14–1801(2) of the Code provides:

> In the exercise of its powers, the Zoning Board of Adjustment *may reverse or affirm, wholly or partly, or modify the order, requirement, decision, or determination appealed from;* and may make such requirement, decision or order, with or without conditions, as ought to be made; and, to that end, it shall have all the powers of the agency from which the appeal is taken. (Emphasis added.)

Consequently, the ZBA had the power to revoke Reagan's permits for Signs F and B.

■ Finally, Reagan argues that the trial court erred by denying his motion to enlarge the record to include an 1) aerial photograph, 2) photographs of billboards taken April 5, 1990, 3) an engineering Plan of Survey prepared April 4, 1990, and 4) L & I procedural document dated September 1989, effective March, 1990, because pursuant to Section 14–1806(4) of the Code, they only served to assist the court in the disposition of the many issues advanced below. Section 14–1806(4) provides the following:

> *If upon the hearing it shall appear to the Court that testimony is necessary for the proper disposition of the matter, it may take evidence,* or remand the case to the Board for the purpose of taking additional evidence as the Court may direct. . . . which shall constitute a part of the proceedings on which the determination of the Court shall be made. (Emphasis added.)

Photographs of the advertising signs and a plan had previously been submitted into evidence by the Korngolds. The trial court apparently determined that the exhibits which Reagan now wished to submit were not necessary for making a determination of the issues presented. Because Section 14–1806(4) of the Code gives the trial court the discretion to accept additional evidence into testimony, the trial court did not err by denying Reagan's motion to enlarge the record.

## C. The Korngolds' Appeal

■ The Korngolds first contend, and we agree, that the ZBA erred by conditionally reinstating their permit for Sign G based on the removal of Mueller's Sign F, because the use of Sign G was always a lawful *conforming* use, and as such, could never be abandoned. *Appeal of Barefoot*, 437 Pa. 323, 263 A.2d 321 (1970). The Korngolds, therefore, have an unconditional right to the reinstatement of the permit for Sign G. Additionally, because we have determined that the revocation of Reagan's Sign F was proper, the reinstatement of the Korngolds' Sign G will not be in violation of Section 14–104(6) of the Code, as Sign G is 550 feet from Sign F and 646 feet from Sign E.

The more difficult question to answer is whether the Korngolds are entitled to a permit for Sign C, which is a *nonconforming* use. The Korngolds argue that they should be granted a permit for the reinstatement of Sign C because they never intended to abandon the use, and should not be penalized for Reagan's actions of removing the sign. The Korngolds further argue that if they are denied the right to a permit to reinstate Sign C, they are being denied their constitutional right to continue the lawful use of their property.

■ The Korngolds correctly contend that a lawful nonconforming use does not lose that status unless the use is extinguished by abandonment, and a finding of abandonment requires proof of an intent to relinquish the use voluntarily. *Rayel v. Bridgeton Township Zoning Hear-*

*ing Board,* 98 Pa.Commonwealth Ct. 455, 511 A.2d 933 (1986).[3] However, while proof of intent to relinquish the use voluntarily is necessary in an abandonment case, such proof is not necessary where the structure is destroyed because the right to reconstruct a structure is extinguished by operation of law. In this particular situation, an abandonment argument is erroneous because Sign C, including its superstructure, was totally destroyed. Therefore, when that sign ceased to exist, the nonconforming use of that sign was also extinguished.[4]

The Korngolds argue that *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of the Township of Moon,* 526 Pa. 186, 584 A.2d 1372 (1991), holds that the discontinuance of a lawful pre-existing nonconforming use is per se confiscatory and violative of Article 1 of the Pennsylvania Constitution, which recognizes the inherent right of citizens to possess and protect property. In *Moon,* an ordinance was adopted which imposed restrictions on the location of adult bookstores. The ordinance also contained an amortization clause which required pre-existing businesses to comply with the ordinance within 90 days from the date the ordinance became effective. The owner of the bookstore challenged the validity of the ordinance, arguing that it was confiscatory and violative of the constitution. Our Supreme Court agreed, finding that in essence, the ordinance required the plaintiff to relocate his entire business within 90 days. Based upon that finding, our Supreme Court held that *amortization and discontinuance* of a nonconforming use was confiscatory.

3. In abandonment cases, the property where the nonconforming use was once permitted continues to exist. Only the nonconforming use of the property is extinguished.

4. The reconstruction of a structure for a specific nonconforming use is not allowed if the zoning ordinance specifies that such construction is prohibited. *AFSO Builders, Inc. v. Upper Darby Zoning Hearing Board,* 12 Pa.Commonwealth Ct. 100, 314 A.2d 860 (1974). Section 14–104(6)(c) of the Code does allow for the rebuilding of a structure which has been demolished other than by fire, Act of God or legal condemnation, but only according to the use regulations of the district in which it is located.

Specifically, in *Moon,* our Supreme Court noted that, "[t]he effect of the amortization provision herein is to deprive appellant of the lawful use of its property in that the ordinance forces appellant to cease using its property as an adult book store within 90 days." *Moon,* 526 Pa. at 194, 584 A.2d at 1376. Because no amortization provision is involved in the present case but only the cessation of a use, the holding in *Moon* simply has no applicability whatsoever.

Moreover, in *Broad Acres Construction, Inc. v. Zoning Hearing Board of North Coventry Township,* 71 Pa.Commonwealth Ct. 280, 283–284, 454 A.2d 675, 677 (1983), we cited *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A.2d 539 (1962), in which our Supreme Court stated:

Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which shall be restored to conformity as speedily as is compatible with the law and the Constitution.

Accordingly, an ordinance limitation such as the one here, forbidding the restoration of a nonconforming structure which fate has substantially eliminated, is a valid exercise of the police power.

Section 14–104 of the Code provides that it is the purpose of that section to discourage and eventually eliminate nonconforming uses and structures because they are detrimental to the orderly development of the city. Under that premise and for the foregoing reasons, the Korngolds are not entitled to the reinstatement of their permit for Sign C.

Accordingly, the five decisions of the trial court dated October 19, 1990, No. 6161; October 25, 1990, No. 6162; October 19, 1990, Nos. 7269 and 7270; October 19, 1990, No. 7271; and May 1, 1990, Nos. 7270, 7271, 7269, 6161 and 6162, are affirmed in all respects except that a permit for the construction of Sign G is to be granted unconditionally.

## ORDER

AND NOW, this 6th day of April, 1992, the orders of the Court of Common Pleas of Philadelphia County, dated October 19, 1990, No. 6161; October 25, 1990, No. 6162; October 19, 1990, Nos. 7269 and 7270; October 19, 1990, No. 7271; and May 1, 1990, Nos. 7270, 7271, 7269, 6161 and 6162, are affirmed in all respects except that a permit for the reconstruction of Sign G is to be granted unconditionally.