**Evelyn HAWK, Appellant**

v.

**CITY OF PITTSBURGH ZONING BOARD OF ADJUSTMENT, City of Pittsburgh, Lynn Seybold and Lisa Ginser.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided Jan. 5, 2012.

**1062**

Thomas H. Ayoob, III, Pittsburgh, for appellant.

Mark J. Homyak, Pittsburgh, for appellees Lynn Seybold and Lisa Ginser.

BEFORE: LEAVITT, Judge, and BUTLER, Judge,[1] and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Evelyn Hawk appeals an order of the Court of Common Pleas of Allegheny County (trial court) denying her a variance from the setback requirements that became necessary after she renovated two, multi-unit residential buildings. In doing so, the trial court affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh. We affirm.

At issue is a parcel of property owned by Evelyn Hawk and her son, Oliver, in the City's R1A–VH district, which is a single unit, high density residential district.[2] When the Hawks purchased the property in 2008, it had been developed with two buildings: a three-story house with four units and a one-story building in the rear with a single unit. The two buildings were separately constructed. A laundry room was attached to the second story of the multi-unit house and was accessible by steps from the streets; the laundry room was available only to tenants of the single unit. A retaining wall was built along the north, or rear, property line, at the back of the single-unit building. Another retaining wall bordered the east side of the single-unit building.

When the Hawks purchased the property, it was in severe disrepair. Evelyn Hawk's husband, James Hawk, engaged an architect to develop a plan to renovate both buildings. The plan called for a complete reconstruction of the rear unit to add a second floor; a demolition of the laundry room addition to the house; and an expansion of the second and third floors of the house. Reproduced Record at 331a–332a, 236a–241a (R.R. ——). By connecting the two structures, the plan would create a single building with five units. James Hawk took responsibility for implementing the plan, which he did without obtaining the necessary permits.[3]

After construction began, the City's Code Enforcement Officer instructed Hawk to stop work on the project. This directive was disregarded. Because of the failure to obtain the required permits, the Code Enforcement Officer issued an order

---

**1.** This case was decided before Judge Butler's term ended on January 2, 2012.

**2.** Prior to 2003, the property was zoned RM–M, which allowed for multi-unit residential uses.

**3.** Hawk has a history of similar conduct and has been cited at least 37 times for building without permits.

on December 10, 2009, that all non-permitted additions be removed. For reasons that have not been explained, Hawk did not comply with the order. Instead, Mrs. Hawk sought the variances at issue in this appeal.

On December 15, 2009, Mrs. Hawk filed an application for variances (1) to allow her continued use of the property as a five-family dwelling and (2) to allow rear yard and side yard setbacks of zero feet. The respective setbacks under the City of Pittsburgh Zoning Code are 15 feet for rear yards and ten feet for side yards. *See* PITTSBURGH ZONING CODE § 903.03.E. On April 1, 2010, the Zoning Board conducted a hearing on the variance applications.

At the hearing, the Hawks offered evidence to show that the property was a lawful nonconforming use because it contained five dwelling units when purchased. The evidence in support of the variance consisted of James Hawk's testimony and satellite photographs of the property.

James Hawk testified that when the property was purchased the east retaining wall was part of the foundation for the east wall of the rear unit. He also maintained that the rear wall of the rear unit had been built right up to the retaining wall at the north side of the property. He asserted that he did not tear down the original rear unit, which had a collapsed roof at the time of the Hawks' purchase. He also asserted that reconstruction followed the original footprint with the exception of the east side, which intruded into the required setbacks. Hawk concluded by stating that his wife sought a variance for a small, 4.9 foot by 12 foot portion on the east side of

the rear unit that extended into the side setbacks.

In opposition, several neighbors testified. Lisa Ginser testified that the new second story on the rear unit appeared to be attached to and supported by her roof. She stated that this adversely affected the value of her home and created a safety issue in the event of a fire. She contested Hawk's testimony that the rear, or north, retaining wall ever touched the rear wall of the rear unit. Lynn Seybold, who owns the property to the east side of the rear unit, testified that prior to the renovation, the property complied with the applicable setback requirements. She claimed that the east retaining wall was actually the remains of a building that was located on her property and that this side of the rear unit had never rested upon this part of the wall, as it does now. She also asserted that the renovation adversely affected the value of her home and character of the neighborhood.

Councilman Bruce Kraus testified. He agreed that the original units met the setback requirements. He testified that Hawk could not have rebuilt the rear unit without first tearing it down.

Based upon the evidence presented, the Zoning Board found, as fact, that the use of the property as a 5–unit residential building was a lawful nonconforming use. Thus, a variance from Section 921.02 of the Zoning Ordinance, pertaining to permitted uses, was not needed. *See* PITTSBURGH ZONING CODE § 921.02.[4] On the other hand, it denied Mrs. Hawk's request for rear and side yard setback variances. The Zoning Board credited the testimony of the neighbors over that of Hawk and made the following findings of fact:

---

4. In relevant part, it provides that
 [a] nonconforming use which has a valid Certificate of Occupancy and lawfully occupies a structure ... on the date that it becomes nonconforming may be continued as long as it remains otherwise lawful....
 PITTSBURGH ZONING CODE § 921.02.

10. There was conflicting testimony ... whether Mr. Hawk tore down the one-story rear structure to build the new extension. He admitted demolishing the second floor extension that was used as a laundry room, but said that he did not demolish the one-story rear structure. Other testimony was provided by Appellant's neighbors, however, that the reconstructed extension's size indicates that it could not have been built without first tearing down the one-story rear structure.

11. The footprint of the reconstructed extension is larger than the original one-story rear structure and occupies substantially the entire back yard of the subject property....

Zoning Board Decision, June 22, 2010, at 2–3. Based on these findings, the Zoning Board reached the following conclusions of law:

2. Appellant's contention that the footprint of the new extension follows the existing footprint of a structure on the subject property is misguided. Even if a structure did exist following the alleged [retaining wall], it has long since been abandoned and was not in place when Appellant purchased the subject property. The relevant footprint this Board shall consider is the footprint of the one-story rear structure which existed on the subject property when Appellant came into ownership. As this structure was conforming to the appropriate setbacks,

Appellant does need the requested dimensional variances from Section 903.03.E's minimum rear yard and interior side yard setback requirements.

\* \* \*

5. The Board concludes that Appellant has failed to meet the standards for the grant of the requested dimensional variances.... The record plainly indicates that Appellants addition, ... substantially and permanently impairs the appropriate use of adjacent properties.

*Id.* at 3–4.

Mrs. Hawk appealed, arguing that the Zoning Board erred in its findings that the original rear unit had been demolished; that the renovated rear unit expanded the footprint of the original; and that the renovation impaired her neighbors' property rights. In addition, she asserted that she was entitled to a *de minimis* variance because the area for which she sought a variance was so small, *i.e.*, the 4.9 foot by 12 foot extension for the east side of the renovated rear unit.

 The trial court, which did not take additional evidence, affirmed the Zoning Board. It held that the record evidence supported the Board's finding that pre-renovation, the rear unit did not extend to the retaining wall. The trial court noted that once a nonconforming building is demolished, the nonconforming building cannot be rebuilt. Mrs. Hawk now appeals to this Court.[5]

---

5. Our scope of review in a zoning case where the trial court has not taken additional evidence is limited to determining whether the local zoning board committed an error of law or an abuse of discretion. *Segal v. Zoning Hearing Board of Buckingham Township,* 771 A.2d 90, 94 n. 6 (Pa.Cmwlth.2001). A board

abuses its discretion when its findings are not supported by substantial evidence. *Id.* Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa.Cmwlth. 448, 545 A.2d 470, 472 (1988)

On appeal, Mrs. Hawk raises four issues, which, for clarity, we consolidate and restate as two. First, she argues that the trial court erred in finding the Zoning Board's findings of fact were supported by substantial evidence. Specifically, she challenges the finding that the rear unit was demolished and replaced with a reconstructed unit that is larger than the original. Second, she argues that the trial court, and Board, erred by not granting her a *de minimis* variance.

We begin with Mrs. Hawk's challenge to the Zoning Board's findings of fact. Her focus is on the finding that the rear unit was demolished and rebuilt larger than the original.

In support, she points out that Hawk and Davin Gartley, the prior owner of the property, testified that the rear unit existed when she purchased the property. She points to various documents in the record that show or refer to the existence of the rear unit. She also points to satellite images taken from Google maps that are in the record. According to Mrs. Hawk, these images show that the rear unit extended to the north and east property lines before the renovation. Further, her husband testified that he did not demolish the rear unit but, rather, he framed the expansion within its existing masonry walls. This evidence, she contends, proves that the renovated rear unit is not larger than the original, aside from the 4.9 foot by 12 foot expansion area, for which she seeks the *de minimis* variance.

■ The credibility of witnesses and the weight to be accorded to witness testimony are matters for the Zoning Board in its capacity as fact-finder. *Shamah v. Hellam Township Zoning Hearing Board,*

(citing *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462

167 Pa.Cmwlth. 610, 648 A.2d 1299, 1304 (Pa.Cmwlth.1994); *Korngold v. Zoning Board of Adjustment of the City of Philadelphia,* 147 Pa.Cmwlth. 93, 606 A.2d 1276, 1279 (Pa.Cmwlth.1992). The Zoning Board is free to accept or reject the testimony of any witness, in whole or in part. *Southeastern Chester County Refuse Authority v. Zoning Hearing Board of London Grove Township,* 898 A.2d 680, 687 (Pa.Cmwlth.2006).

The Zoning Board's findings addressed two issues (1) whether the walls of the rear unit prior to the renovation extended up to and included the retaining wall and (2) whether the walls of the renovated rear unit were located in the same position as they had been pre-renovation. The Board answered each question in the negative.

■ The Board's findings are supported by substantial evidence. Ginser, Kraus, and Seybold all testified that, prior to the renovation, the rear unit was separated from the retaining wall. Now it touches the north retaining wall. The new building is larger. Further, Kraus testified that the renovated rear unit could not have been built without tearing down the original. Their testimony was contradicted by Hawk, but his testimony was not credited. It is for the Zoning Board to resolve conflicts in testimony. *In re Petition of Dolington Land Group,* 576 Pa. 519, 526, 839 A.2d 1021, 1026 (2003)(noting the Zoning Board is the sole judge of credibility with power to resolve conflicts in testimony and to reject even uncontradicted testimony that it finds to be lacking in credibility). In effect, Mrs. Hawk is asking this Court to make independent credibility determinations, and this we cannot do. *See Shamah,* 648 A.2d at 1304; *Korngold,* 606 A.2d at 1279. In short, the Zoning Board's

A.2d 637, 640 (1983)).

critical findings about the dimensions of the reconstructed rear unit are supported by substantial evidence.[6]

Next, Mrs. Hawk contends that since the new rear unit was only expanded eastward by 4.9 feet, for a length of 12 feet, she is entitled to a *de minimis* variance.[7] We disagree.

■ The grant of a *de minimis* variance *is a matter of discretion* with the local zoning board. *Segal,* 771 A.2d at 95 (emphasis added). A *de minimis* variance may be granted where the variation requested is minor and rigid compliance with the zoning ordinance is not necessary to protect public policy concerns. *Township of Middletown v. Zoning Hearing Board of Middletown Township,* 682 A.2d 900, 901 (Pa.Cmwlth.1996). There are no set criteria for determining what will be considered *de minimis.*[8] Instead, the grant of a *de minimis* variance depends upon the circumstances of each case. *Bailey v. Zoning Board of Adjustment of the City of Philadelphia,* 569 Pa. 147, 166 n. 21, 801 A.2d 492, 504 n. 21 (2002).

■ Here, Mrs. Hawk argues that she is entitled to a *de minimis* variance because the expansion area is small. This argument is premised on the assumption that the rear unit had not been demolished as part of the renovation and enlarged to a larger footprint. However, the Zoning Board found that the reconstructed rear unit has been expanded on the north side. We cannot find that the Zoning Board abused its discretion in holding that the variance from both the rear and side-yard setbacks for the entire length of the new

6. The Zoning Board did not address the evidentiary value of the Google satellite images. However, the Hawks do not argue capricious disregard of these images. They focus, instead, on James Hawk's testimony.

7. The Board found as fact that Hawk did not sustain her burden under Section 922.09.E of the Code, which contains five requirements for a variance. In fact, a review of the record shows that she failed to proffer any testimony before the Board regarding the five factors in Section 922.09.E. Therefore, Hawk is categorically barred from now attempting to advance arguments to meet her burden under Section 922.09.E of the Code. *See In re Kreider,* 808 A.2d 340, 342 n. 4 (Pa.Cmwlth.2002) (noting issues or arguments not raised before the Board are waived).

8. Recently, in *Lench v. Zoning Board of Adjustment of the City of Pittsburgh,* 13 A.3d 576 (Pa.Cmwlth.2011), this Court reviewed the case law precedent on *de minimis* variances. We noted:

> In [*Pyzdrowski v. Board of Adjustment of the City of Pittsburgh,* 437 Pa. 481, 489–491, 263 A.2d 426, 431–432 (1970) ] a change of .7 feet was held *de minimis.* On the other hand, disturbing .35 acres of wetlands to construct a road was held not to be *de minimis. Segal,* 771 A.2d at 91–95. There is authority that a dimensional change of less than 10 percent will be treated as *de minimis.* For example, in *Township of Middletown,* 682 A.2d at 901–02, we held that adding 167 square feet to a building, or 6.76 percent, beyond the dimensional maximum was *de minimis.* In *In Re Appeal of Ressler Mill Foundation* [132 Pa.Cmwlth. 569], 573 A.2d 675, 676 (1990), we held that a seven foot, or 4.7 percent variance from a 150 foot lot width requirement, was *de minimis.*

> *Id.* at 582. Thus, in *Lench,* we ultimately held that

> [w]hether the variance requested here is expressed as four inches or 28 inches, the decision of the Board to treat DiLucente's request as *de minimis* was appropriate. A four inch variance amounts to a .83 percent deviation from the ordinance's 40 foot height restriction and a .79 percent deviation from the home's existing height of 42 feet. Similarly, when measured from the Zoning Code's 40 foot maximum height restriction the total deviation of two feet four inches, or 28 inches, amounts to a 5.82% variance. These measurements are consistent with our precedent on when a variance is appropriately determined to be *de minimis.*

> *Id.*

rear unit's north and east walls was not *de minimis.*

Accordingly, we affirm.

### ORDER

AND NOW, this 5th day of January, 2012, the order of the Court of Common Pleas of Allegheny County, dated February 9, 2011, in the above-captioned matter is hereby AFFIRMED.