# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Damon Huston | : | |
| | : | |
| v. | : | No. 1813 C.D. 2017 |
| | : | Argued: October 15, 2018 |
| Borough of Edinboro, | : | |
| Zoning Hearing Board | : | |
| and Borough of Edinboro | : | |
| | : | |
| Appeal of: Borough of Edinboro | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                    FILED: November 20, 2018

      The Borough of Edinboro (Borough) appeals from an order of the Court of Common Pleas of Erie County (trial court), dated November 9, 2017.  The trial court reversed the decision of the Borough of Edinboro Zoning Hearing Board (ZHB), thereby sustaining Damon Huston's (Huston) appeal of the denial of his application for a dimensional variance (Application).  For the reasons discussed below, we affirm in part and remand in part for further consideration by the trial court.

## I. BACKGROUND

      Huston is the owner of real property located at 217 Walnut Street in the Borough (Property).  The Property is located in an R-3 Lakeside Residential District

(R-3 District). Pursuant to Section 27-307 of the Borough's Zoning Ordinance (Ordinance), the Property is required to have a minimum 30-foot front yard setback and a minimum 6-foot side yard setback, with an aggregate side yard setback of 16 feet. The house located on the Property does not meet the minimum 30-foot front yard setback requirement but qualifies as a preexisting, nonconforming structure under the Ordinance. In August/September 2015, Huston replaced the house's existing front stoop, which measured 4'10" x 8', with a new covered porch, which measures 6' x 20'. Sometime thereafter, in May/June 2016, Billie Fitzsimmons (Fitzsimmons), the Borough's zoning officer/administrator, discovered the covered porch and issued an enforcement notice to Huston. The enforcement notice informed Huston that the construction of the covered porch at his Property violated the Ordinance, because Huston failed to first obtain a zoning permit or building permit. Subsequent thereto, on July 5, 2016, Huston filed an application for zoning approval with the Borough. The application for zoning approval, which Huston completed on July 31, 2015, before he began construction at the Property, sought approval to replace the Property's existing front porch with a 6' x 20' covered porch. Fitzsimmons denied Huston's application for zoning approval, and Huston filed an application for a dimensional variance with the ZHB.

The ZHB conducted a public hearing on Huston's application for a dimensional variance on August 3, 2016.[1] Huston, not represented by counsel at the time, testified that in July 2015 he completed an application for zoning permit and submitted it to the Borough by handing it to a "young gentleman" through the

_____

[1] At the conclusion of the August 3, 2016 public hearing, the ZHB voted to continue the hearing to September 7, 2016, for the sole purpose of discussing Huston's application for a dimensional variance. The ZHB did not take any additional testimony at the September 7, 2016 hearing.

2

Borough window, but he did not include payment for the application fee. (Reproduced Record (R.R.) at 11a-12a, 14a-15a.) Thereafter, from late August 2015 through early September 2015, Huston, Huston's father, and Huston's uncle removed the existing stoop and constructed the new covered porch at the Property. (*Id.* at 12a, 14a.) Subsequent thereto, in May 2016, Huston received a violation notice from the Borough. (*Id.* at 13a.) Huston admitted that he was aware that he needed to obtain a building permit and that he constructed the new covered porch without a building permit. (*Id.* at 14a, 16a-17a.) When questioned why he did not pursue a building permit, Huston explained:

> I attempted to make a couple phone calls, and I stopped in a couple of times. Whether [Fitzsimmons] was busy, that I don't know, and my work schedule is very, very hectic. For me to actually get here when the building is still open, I have to take off time from work which cuts into my wages and travel time expenses and such else.

(*Id.* at 14a.) Huston also explained that from September 2015, when he completed the new covered porch, to May 2016, when he received the violation notice, he did not contact the Borough to determine what had happened to his building permit application. (*Id.* at 17a.)

On September 13, 2016, the ZHB rendered its decision, denying Huston's application for a dimensional variance. In so doing, the ZHB concluded: (1) Huston knowingly violated the Ordinance by failing to obtain a zoning permit before constructing the covered porch; and (2) Huston failed to meet the Ordinance's criteria for a dimensional variance, because the unnecessary hardship was created by Huston and was not due to any physical circumstances or conditions unique to the Property. Huston appealed the ZHB's decision to the trial court, and the Borough intervened. The trial court, upon mutual agreement of the parties, referred the matter to mediation. At the conclusion of the mediation, the

3

parties agreed that Huston would obtain a survey of the Property and then apply to the ZHB for reconsideration of his request for a dimensional variance. Based on the results of the mediation, the trial court continued Huston's appeal indefinitely to allow the parties to pursue the proposed resolution.

Huston obtained a survey of the Property on February 1, 2017. Thereafter, on March 24, 2017, Huston submitted his Application to the ZHB. The ZHB conducted a public hearing on Huston's Application on April 19, 2017. At that time, Huston presented photographs of other homes located in the R-3 District that encroach into the 30-foot front yard setback, as well as letters of support from his neighbors. While Huston and his attorney answered the ZHB's questions and clarified some issues for the record, Huston did not offer any additional substantive testimony in support of his Application.

On June 2, 2017, the ZHB rendered its written decision,[2] denying Huston's Application. In so doing, the ZHB concluded that the hardship alleged by Huston—*i.e.*, the economic detriment that he would suffer by having to tear down the newly-constructed covered porch—was self-inflicted, because Huston knowingly constructed the covered porch without zoning approval. The ZHB also concluded that no unnecessary hardship existed prior to the construction of the covered porch, because the Property's former stoop was consistent with the front yard setbacks of the neighboring properties. The ZHB further concluded that the requested variance was not *de minimis*. The ZHB also concluded that this case was distinguishable from what it referred to as the Kelly Green (Green) case, a case in which the ZHB granted a dimensional variance for an 8-foot covered porch in the

---

[2] At the conclusion of the April 19, 2017 hearing, the ZHB voted to deny Huston's Application but did not issue its written decision until June 2, 2017.

4

R-3 District, because: (1) the setback/encroachment dimensions and requested relief were different in both cases; and (2) Huston knowingly failed to follow the process to obtain zoning approval, whereas Green attempted to follow the process to obtain zoning approval despite confusion created by the zoning administrator.

Huston appealed the ZHB's decision to the trial court, and the Borough intervened. The trial court held a status conference on September 19, 2017. At that time, the trial court heard oral argument relative to Huston's appeal. Thereafter, on September 28, 2017, the trial court judge conducted a site visit of the Property. Subsequent to the site visit, on November 9, 2017, the trial court issued an opinion and order reversing the ZHB's decision and sustaining Huston's appeal of the denial of his Application. In so doing, the trial court concluded that Huston met the requirements for a dimensional variance under the Ordinance or, alternatively, under the *de minimis* doctrine.[3] The Borough appealed the trial court's decision to this Court.

## II. ARGUMENTS/ISSUES ON APPEAL

On appeal,[4] the Borough, without consideration of the effect of the trial court's decision to accept additional evidence, argues that the trial court erred in reversing the ZHB's decision because: (1) the ZHB properly concluded that Huston failed to establish all of the elements required for a dimensional variance under the

---

[3] In its opinion, the trial court set forth its standard of review as if it took no additional evidence. On September 28, 2017, however, the trial court judge conducted a site visit of the Property. An on-site inspection of the subject premises constitutes additional evidence and requires the trial court to hear the matter de novo. *See Board of Supervisors of Upper Merion Twp. v. Wawa, Inc.*, 505 A.2d 645, 646-47 (Pa. Cmwlth. 1986) (*Wawa, Inc.*).

[4] Given that the trial court took additional evidence in this case and considered the matter de novo, this Court's standard of review "is confined to determining whether [the trial court] abused its discretion or committed an error of law." *Wawa, Inc.*, 505 A.2d at 646.

5

Ordinance;[5] (2) the ZHB did not abuse its discretion by denying Huston's Application under the *de minimis* doctrine; and (3) the ZHB was not required to grant Huston's Application based on a variance the ZHB previously granted to another applicant, which allowed that applicant to construct a porch that encroached on the setback requirements.[6] Given that the trial court took additional evidence by conducting a site inspection of the Property, we must review the trial court's decision, not the ZHB's decision. For the purposes of this appeal, we have, therefore, recharacterized the Borough's arguments and will consider the following issues: (1) whether the trial court erred by concluding that Huston was entitled to a dimensional variance under the Ordinance; and (2) whether the trial court erred by concluding that Huston was entitled to a dimensional variance under the *de minimis* doctrine.[7]

### A. Whether the Trial Court Erred By Concluding That Huston Was Entitled To a Dimensional Variance Under the Ordinance

The Borough argues that the trial court erred by concluding that Huston was entitled to a dimensional variance under the Ordinance. More specifically, the Borough argues that Huston failed to establish that he suffered an unnecessary hardship because: (1) the financial hardship that Huston will face by having to remove the covered porch from the Property was self-created; and (2) the house's

---

[5] While the Borough characterizes its argument as one of substantial evidence, the Borough is essentially arguing that the trial court erred because Huston failed to meet the necessary requirements for a dimensional variance. As this is a question of law, not fact, we will analyze it as such in this opinion.

[6] The ZHB did not file a brief in support of the Borough's appeal, but indicated that it stands behind its decision and concurs in the Borough's arguments set forth in this appeal.

[7] Given that we are reviewing the trial court's decision, not the ZHB's decision, we will not address the Borough's third issue on appeal—*i.e.*, whether the ZHB was required to grant Huston's Application based on one of its prior decisions.

location on the Property, the size and dimensions of the Property, and/or Huston's desire for a larger, covered porch are not sufficient to establish unnecessary hardship. The Borough argues further that Huston also failed to establish that there is no possibility that the Property can be developed in conformity with the Ordinance, because the Property can be used as a residential dwelling without the covered front porch and Huston "was permitted to replace the front stoop on his house without running afoul of the [Ordinance]." (Borough's Reply Br. at 6.) The Borough also argues that Huston failed to even meet the more relaxed standard developed by the Pennsylvania Supreme Court in *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998), because, while *Hertzberg* "does reduce the quantum of proof necessary for the grant of a dimensional variance, it does not eliminate the need for [Huston] to prove each of the required elements for a variance." (Borough's Br. at 35.)

In response, Huston argues that the physical placement of the house on the Property creates an unnecessary hardship because it "is a unique physical circumstance of the [P]roperty necessitating a variance in order to construct anything on the front of [the house]." (Huston's Br. at 11-12.) Huston argues further that "the physical circumstances and conditions [of the Property] prevent any possibility that the [P]roperty can be developed in strict conformity with the [Ordinance,]" because he cannot safely utilize the house's front entrance without steps and a landing and no structure on the front of the house would be in conformity with the Ordinance's 30-foot front yard setback requirement. (Huston's Br. at 12.) Huston also argues that the trial court properly determined that, when applying the more relaxed standard established by the Supreme Court in *Hertzberg*, he established that he suffers an unnecessary hardship due to the size and configuration of the Property

7

and the placement of the house located on the Property, a hardship that was not self-created.

A variance is a departure from the exact provisions of a zoning ordinance. *Brennen v. Zoning Bd. of Adjustment of the City of Connellsville*, 187 A.2d 180, 182 (Pa. 1963). Pursuant to Section 27-608 of the Ordinance, the ZHB may grant a variance if it finds that all of the following conditions exist, where relevant:

A. There are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located[;]

B. Because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property[;]

C. Such unnecessary hardship has not been created by the applicant[;]

D. The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare[;] and

E. The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue. In granting any variance, the [ZHB] may attach such reasonable conditions and

8

safeguards as it may deem necessary to implement the purpose of this chapter.

With regard to the first requirement for a variance—*i.e.*, unique physical circumstances and conditions of the property constituting an unnecessary hardship—our Supreme Court has adopted a more relaxed standard with respect to dimensional variances. *See Hertzberg*, 721 A.2d at 47-48. This Court has offered the following explanation of the Supreme Court's decision in *Hertzberg*:

> A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. *Hertzberg*[, 721 A.2d at 47]. The same criteria apply to use and dimensional variances. *Id.* However, in *Hertzberg*, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.

> Under *Hertzberg*, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." [*Id.* at 50.]

> Although *Hertzberg* eased the requirements, it did not remove them. *Tri-County* [*Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth.), *appeal denied*, 101 A.3d 788 (Pa. 2014)]. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. *Id.* Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*. *Id.*

9

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015).

Here, the trial court concluded that Huston was entitled to a dimensional variance because he established, *inter alia*: (1) unnecessary hardship—*i.e.*, "the fact that [Huston's house] is a [nonconforming] use presents a necessary [sic] hardship for [Huston] in constructing his covered porch or any other structure on [the P]roperty[,]"; and (2) that the Property cannot be developed in strict conformity with the Ordinance and, therefore, a variance is necessary to enable the reasonable use of the Property—*i.e.*, steps and a landing are necessary to access the front of the house safely and any replacement structure that is built would violate the setback requirements of the Ordinance. (Trial Ct. Decision at 8-10.) In making these conclusions, however, the trial court appears to have disregarded Section 27-401 of the Ordinance, which provides that "[a]ny nonconforming use may be continued, or may be changed to a use of the same or a more restrictive classification." Stated more simply, Section 27-401 of the Ordinance permitted Huston to replace the existing stoop, a nonconforming structure, which had deteriorated and fallen into disrepair, with a stoop of the same or smaller size, without violating the Ordinance. A new stoop of the same or smaller size would enable Huston to access the front of the house in a safe manner and to continue to use the Property in the same manner that he has since he purchased the Property. Thus, even if we apply the more relaxed standard for establishing unnecessary hardship in the context of a dimensional variance developed in *Hertzberg*, Huston has not demonstrated that he suffered any unnecessary hardship or that he cannot develop the Property in strict conformity with the Ordinance, such that a variance is needed to enable a reasonable use of the Property. For these reasons, we conclude

10

that the trial court erred by concluding that Huston was entitled to a dimensional variance under the Ordinance.

## B. Whether the Trial Court Erred By Concluding That Huston Was Entitled To a Dimensional Variance Under the *De Minimis* Doctrine

The Borough argues that the trial court erred by concluding that Huston was entitled to a dimensional variance under the *de minimis* doctrine. More specifically, the Borough argues that there is no general right to a *de minimis* variance and the decision to grant such a variance is solely within the discretion of the ZHB. The Borough argues further that the requested deviations from the 30-foot front yard setback requirement and the 6-foot side yard setback are not minor. The Borough also argues that, regardless of whether the deviations are minor, rigid compliance with the Ordinance is necessary to protect the public policy concerns of the Ordinance given the fact that Huston violated the Ordinance by constructing the covered front porch without first obtaining a zoning permit/variance. In response, Huston argues that, after relocating steps to the side of the covered porch, "the current setback encroachment of the newly[-]constructed [covered] porch is nearly identical to the setback encroachment that existed with the pre-existing, non-conforming stoop." (Huston's Br. at 21.) Huston argues further that rigid compliance with the Ordinance is not necessary to protect the public policy concerns of the Ordinance because there is no public safety or welfare concern associated with the covered porch, and the covered porch does not change the character or appearance of the surrounding neighborhood, but rather, "is more in conformity with the residences located within the [R-3 District]." (Huston's Br. at 21.)

The *de minimis* doctrine establishes "a narrow exception to the heavy burden of proof involved in seeking a variance." *Dunn v. Middletown Twp. Zoning Hearing Bd.*, 143 A.3d 494, 506 (Pa. Cmwlth.), *appeal denied*, 162 A.3d 1113

(Pa. 2016). "A *de minimis* variance may be granted where the variation requested is minor and rigid compliance with the zoning ordinance is not necessary to protect public policy concerns." *Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012). "There are no set criteria for determining what will be considered *de minimis*. Instead, the grant of a *de minimis* variance depends upon the circumstances of each case." *Id.* (footnote omitted). In addition, "there is no general right to a *de minimis* variance in this Commonwealth, and the decision of whether to grant a *de minimis* variance is left to the discretion of the [fact finder]." *Alpine, Inc. v. Abington Twp. Zoning Hearing Bd.*, 654 A.2d 186, 191 (Pa. Cmwlth. 1995) (internal citation omitted).

Here, the trial court concluded that Huston's request for a variance from the front yard setback requirement was *de minimis*. In so doing, the trial court reasoned:

> Pursuant to the [Ordinance], the [front yard] setback in the [R-3 District], where [Huston's] residence is located, is [30 feet]. [Huston's] residence, built in the 1950's [sic], is currently [15 feet 2 inches] from Walnut Street (50.6% of the setback requirement), without considering the stoop or covered porch. [Huston's] stoop had measured [4 feet 10 inches]; therefore, [Huston's] residence with the stoop, which was constructed prior to the enactment of the [Ordinance] and was an approved [nonconforming] use, was [10 feet 4 inches] from Walnut Street (34.4% of the setback requirement). [Huston's] covered porch measures [6 feet] and extends [1 foot 2 inches] further than [Huston's] original stoop; therefore, [Huston's] residence with the covered porch, for which a variance is requested, is [9 feet 2 inches] from Walnut Street (30.6% of the setback requirement). Therefore, [Huston's] covered porch would decrease the [front yard] setback by only 3.8% and is *de minimis*.

> Furthermore, rigid compliance with the [Ordinance] setback requirements is not necessary to protect the public

> policy concerns of [the O]rdinance. As stated above, [Huston's] residence with the stoop is a [nonconforming] use as it is well outside the setback requirements set forth by the [Borough]. [Huston's] requested variance in order to keep his covered porch is [14 inches], which is a minor deviation of the setback requirements. Multiple residences in the [Borough's] Lakeside area are also outside the setback requirements.

(Trial Ct. Decision at 16 (internal citations omitted).) Based on our review of the trial court's decision, we find no abuse of discretion with the trial court's conclusion that Huston was entitled to a dimensional variance from the front yard setback requirement under the *de minimis* doctrine.

## C. Side Yard Setback

In reaching its decision, the trial court observed that the side yard setback was not at issue in this case. Based upon the record before the Court and the briefs filed by the parties, it is unclear to the Court whether the trial court should have considered the ZHB's denial of Huston's request for a dimensional variance from the side yard setback requirement on appeal. When questioned at argument, the parties appeared to be in disagreement as to whether there remained a need for the trial court to consider the requested variance for the side yard setback. We, therefore, remand the matter to the trial court for clarification and, if necessary, to consider whether the ZHB committed an error of law by denying Huston's request for a dimensional variance from the side yard setback under the *de minimis* doctrine. In so doing, we remind the trial court that, given that it conducted a site visit and took additional evidence, it should review this matter de novo.

13

## III. CONCLUSION

Accordingly, we affirm the trial court's order in part and remand the matter to the trial court for further consideration consistent with this opinion.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Damon Huston                          :
                                      :
                v.                    :     No. 1813 C.D. 2017
                                      :
Borough of Edinboro,                  :
Zoning Hearing Board                  :
and Borough of Edinboro               :
                                      :
Appeal of:  Borough of Edinboro       :

# **O R D E R**

AND NOW, this 20th day of November, 2018, the order of the Court of Common Pleas of Erie County (trial court) is hereby AFFIRMED in part, and the matter is REMANDED to the trial court for further consideration consistent with this opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge