# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renaissance Real Estate
Holdings, L.P.,
             Appellant

v.

City of Philadelphia Zoning
Board of Adjustment

:
:
:
:
:
:
:
:
:
:

No. 1410 C.D. 2017
Argued: November 13, 2018

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                **FILED: December 6, 2018**

In this zoning appeal, Renaissance Real Estate Holdings, L.P. (Applicant) asks whether the Court of Common Pleas of Philadelphia County (trial court) erred in affirming a decision of the City of Philadelphia Zoning Board of Adjustment (ZBA) that refused to approve Applicant's proposed three-family dwelling as a non-conforming use. Applicant primarily argues that the ZBA erred in determining that the Philadelphia Zoning Code (Zoning Code) prohibits Applicant's proposed replacement of its existing, lawful non-conforming use. Upon review, we affirm.

## I. Background

Applicant owns the property located at 451 Green Lane in the City of Philadelphia's (City) Roxborough neighborhood (property). The property is a 3,740 square-foot, mid-block lot located in an RSA-3 Residential Single-Family

Detached zoning district.[1]  The property is improved with a three-story (35-foot), vacant, detached residential structure.  The existing structure is comprised of a three-family dwelling, with one dwelling unit on each floor.  Two of the dwelling's units are two-bedroom units; the third unit is a one-bedroom unit.

In October 2015, Applicant applied to the Philadelphia Department of Licenses and Inspections (L&I) for a zoning/use registration permit for the proposed "complete demolition of all existing structures and for the erection of a new three unit multi-family dwelling with porch, rear deck, and accessory roof deck(s) with pilot house(s) to enclose stair and landing only as per plans" on the property.  ZBA Op., Finding of Fact (F.F.) No. 1 (emphasis added).  L&I determined that the proposed use/construction did not meet the Zoning Code's requirements because: (1) multi-family residences are not permitted in the RSA-3 district; (2) three accessory parking spaces are required, and Applicant proposed no parking spaces; and (3) a minimum side yard width of eight feet is required, and Applicant proposed a five-foot-wide side yard.  As a result, L&I issued a notice of refusal.  Applicant appealed L&I's refusal to the ZBA.

In its application for appeal, Applicant stated:

> [Applicant] is the owner of a three-story, three-family dwelling [on the property].  The existing structure is affected by substantial structural defects.  [Applicant] proposes to replace the existing structure with a Code-compliant building dedicated to the same use, three-family dwelling.  Strict application of the Zoning Code

---

[1] The only residential use permitted by right in the RSA-3 Residential Single-Family Detached zoning district is single-family use.

2

imposes a hardship on the [p]roperty. The grant of relief will have no adverse effect on the public health, safety or welfare.

F.F. No. 3. A hearing ensued before the ZBA.

After the hearing, the ZBA voted to deny Applicant's appeal of L&I's notice of refusal. In support, the ZBA made the following findings.

In 1981, L&I issued a use registration permit for the property identifying the approved use as a three-family dwelling. Applicant purchased the property in July 2015, at which time it was vacant. Applicant proposes to demolish the existing structure on the property and replace it with a three-story (38-foot) structure, comprised of three side-by-side, three-story, two-bedroom dwelling units, each with a separate entrance and each with a roof deck and pilot house. Each of the proposed dwelling units would be approximately 1,500 square feet for a combined gross floor area of 4,500 square feet.

Before the ZBA, project architect Rustin Ohler (Applicant's Architect) testified that the new structure's footprint would be "slightly different" than that of the existing building in that it would have a five-foot side yard as opposed to the existing four-foot side yard, and it would be "slightly deeper in depth than [the] existing [building]." F.F. No. 12. Applicant's Architect did not specify how much deeper the proposed structure would be than the existing structure, nor did he indicate the gross floor areas of the existing and proposed structures. Additionally, the exhibits Applicant submitted do not provide this information.

3

In addition, Fred Abrams, Applicant's Owner, testified regarding his understanding of the property's status as a three-family dwelling and his proposed development of the property. Applicant's Owner testified he inspected the property before purchasing it; at that time, it was configured with a three-family dwelling. He described the property as vacant and "in pretty poor condition" and stated he was "not certain when it was last occupied." F.F. No. 19. Applicant's Owner testified he initially intended "to clean up the violations and to renovate the building" but after "adding the numbers up, and doing it to the standards that I have for renovation, it made more sense to possibly start from scratch." F.F. No. 20 (emphasis added). Applicant's Owner acknowledged that he could not rent the existing building as a three-family dwelling and estimated it would take him 60 days to "paint it, carpet it, maybe the appliances have to be – some carpentry." F.F. No. 21. When asked by the ZBA "Why don't you just do that[?]" Applicant's Owner responded: "I have an existing three unit building that by right I can go in and do work, and keep it as a three unit building. I would like to do something better than that. I'd like to start from scratch." F.F. No. 22 (emphasis added).

Applicant's Owner further testified that he obtained a certification statement from the City identifying the property's lawful use as a three-family dwelling at the time of purchase, and he subsequently obtained a rental license for three units. F.F. No. 23. A certification statement issued to Applicant in July 2015 indicated that L&I records showed the property to be legally registered for use as a three-family dwelling. The certification statement also provided "IF THIS PROPERTY IS NOT BEING USED AS INDICATED ABOVE, IT IS THE OWNER'S RESPONSIBILITY TO FILE FOR A NEW USE REGISTRATION PERMIT WITH [L&I'S] ZONING UNIT." F.F. No. 24.

4

Applicant's counsel stated that the property's use as a three-family dwelling is "not out of character with this block." F.F. No. 25. He submitted a list of "19 buildings in the 400 block of Green Lane which are all legal non[-]conforming [multi-family] uses," along with photographs and zoning records for each building. F.F. No. 26. Office of Property Assessment records submitted for 15 of those properties show the existing buildings on the properties range from 1,247 to 3,405 square feet. Applicant's counsel did not mention the number of single-family homes on the block, but he stated "there are fewer single-family homes than non[-]conforming [multi-family dwellings]." F.F. No. 28. When the ZBA Chairperson asked why the property could not be used for a single-family home, Applicant's counsel responded that Applicant "does not need to show a hardship to replace a legal non[-]conforming use that is a property right." F.F. No. 29 (emphasis added). Applicant's counsel stated: "[Applicant] [is] here to show hardship on the two remaining refusals, which is the side yard and the parking." Id. On the non-conforming use issue, Applicant's counsel stated, "the threshold issue ... is whether or not the use has been abandoned." F.F. No. 30. He argued that neither discontinuance of the use for a specified time period nor the "lapse of a license" was sufficient to establish abandonment. Id.

Prior to appearing before the ZBA, Applicant presented its proposal to the Central Roxborough Civic Association (CRCA), the registered community organization for the area, at a public meeting. A vote taken at the meeting showed 25 attendees in opposition to the project and none in support of it. In a written statement, CRCA President Donald Simon (CRCA President) stated, "a non-conforming use is abandoned after three years of vacancy and voluntary

5

demolition." F.F. No. 32. Describing the area at issue, the CRCA President wrote that although there are "some rental units, the 400 Block of Green Lane is predominately owner-occupied single family homes." F.F. No. 33. The CRCA President and a number of CRCA members also appeared at the ZBA hearing and stated their opposition to the proposed development.

Kay Sykora, who resides at 445 Green Lane, described the proposed structure as "about twice the size of the building that is there." F.F. No. 35. She stated: "I think my opposition is just [to] the sheer scale of this. You are talking the equivalent of three trinities turned sideways. This is very different than the three apartments stacked on top that pre-existed." Id. Sykora submitted photographs of recently renovated properties in the immediate area, which showed "there is a commitment to this area as a single-family residential area." F.F. No. 36.

Ray Feinsehill, an attorney representing Debra Valenti-Epstein and John Hagarty, who own and reside at 443 Green Lane, read into the record a letter from his clients opposing Applicant's proposal. Valenti-Epstein and Hagarty's grounds for opposition included: Applicant's proposal is for "three trinity townhouses" each with "separate first floor entrances, party walls to separate them, and separate rooftop decks"; the proposed structure is "massive" and "more than double the size of the existing house"; [and] the proposed townhouses "are not in scale with the surrounding houses and are not the least minimal [sic] required to achieve one three-family dwelling .... " F.F. No. 37.

6

In addition, CRCA Board Member Alexander Fidrych asserted that the existing three-family use of the property will, by virtue of the Zoning Code, "be extinguished when the structure is demolished." F.F. No. 38. CRCA Member Collin Dawson, an architect, who resides at 633 Gate Street, similarly asserted, "once the property is demolished, the zoning reverts back to the base zoning … which is residential." F.F. No. 39.

Celeste Hardester, who resides at 368 Green Lane, testified that she worked with the group that "put together the [Central Roxborough/Neighborhood Conservation Overlay (NCO) District] for the area." F.F. No. 40. Hardester testified that she opposed the proposed use.

In addition, by letter to the ZBA, Councilman Curtis Jones advised the ZBA that he opposed the proposed development, which he described as "an overuse for this location" that is "vehemently opposed by the neighbors and the [CRCA]." F.F. No. 42.

The ZBA also received a petition signed by area residents who oppose the proposed development as well as letters and emails expressing opposition to the project. Counsel for the CRCA submitted a letter to the ZBA, which stated, "Applicant's proposal to build three new townhouses on this undersized lot is an unsupported expansion of any prior use or dimensions at this location." F.F. No. 44. Counsel for the CRCA disputed Applicant's counsel's contention that no use variance was required. He argued a non-conforming use cannot be continued if the structure housing it "has been vacant, is voluntarily destroyed and replaced with a

7

larger, different structure."  F.F. No. 44.  Further, in an email to the ZBA, area resident Robert Spear wrote:

> The scale of the proposed development is out of … proportion with its surroundings.  A structure in excess of 4,500 [square feet] is planned to replace an improvement of 2,872 [square feet].  This new structure would thus be more than half again as large as the dwelling house which currently occupies this [property], itself one of the larger structures on the block.  In addition, it is designed less as an apartment house and more as a row of trinities, each occupying three stories and planned for individual sale as condominiums. Such density, on [the property], is incompatible with the vision laid out in the Lower Northwest District Plan.

F.F. No. 45.

Based on these findings, the ZBA made the following conclusions of law.  The proposed three-family dwelling is not a permitted use in the RSA-3 district.  Applicant contends no use variance is required because the proposed three-family dwelling is a lawful non-conforming use that may be continued by right, even in a replacement structure.  The ZBA concluded the proposed multi-family dwelling was not permitted as a continuation of a non-conforming use.

As to the non-conforming use issue, the ZBA explained that under Section 14-305(10)(b) of the Zoning Code, titled "Rights Following Destruction," a non-conforming building or use that is "destroyed or rendered unusable by fire or an act of God or a third party over which the owner has no control" may be reconstructed or resumed as follows:

> (a) a replacement structure that does not reduce the non[-]conforming setbacks or exceed the non[-]conforming

8

area or height of the destroyed structure may be constructed, and (b) the non[-]conforming use that existed prior to the destruction may be re-established, and (c) the property need not provide any more off-street parking spaces or loading areas than the property had before the destruction.

In contrast, Section 14-305(10)(c) of the Zoning Code, titled "Voluntary Destruction," states (with emphasis added):

Any non[-]conforming structure, use, lot, parking area, site improvement or accessory sign destroyed through means other than [by fire or act of God or a third party over which the owner has no control] shall be reconstructed in compliance with the Zoning Code for the zoning district where it is located.

Concl. of Law No. 6 (quoting Section 14-305(10)(c) of the Zoning Code).

The ZBA further explained that Pennsylvania case law addressing a property owner's rights after voluntary destruction of a non-conforming structure or use is consistent with the Zoning Code's language. See Korngold v. Phila. Zoning Bd. of Adjustment, 606 A.2d 1276 (Pa. Cmwlth. 1992); AFSO Builders, Inc. v. Zoning Hearing Bd. of Twp. of U. Darby, 314 A.2d 860 (Pa. Cmwlth. 1974); see also Keebler v. Zoning Hearing Bd. of City of Pittsburgh, 998 A.2d 670 (Pa. Cmwlth. 2010); 5542 Penn LP v. Zoning Bd. of Adjustment of Pittsburgh (Pa. Cmwlth., No. 2227 C.D. 2015, filed December 20, 2016), 2016 WL 7369097 (unreported).

The ZBA noted that, in support of its argument that reconstruction of the non-conforming, three-story dwelling on the property was permitted by right,

9

Applicant relied on Money v. Zoning Hearing Board of Haverford Township, 755 A.2d 732 (Pa. Cmwlth. 2000). The ZBA determined that Money was distinguishable because the ordinance at issue in that case contained no specific prohibition on reconstruction of a non-conforming structure or use.

Thus, the ZBA determined, relevant case law was consistent and clear. More specifically, Pennsylvania courts hold that, where a structure housing a non-conforming use is voluntarily demolished, a landowner may be prohibited from resuming the use in a replacement structure, provided that the prohibition is specifically stated in the applicable ordinance. Under such circumstances, the ZBA stated, the prior non-conformity is extinguished by operation of law; thus, it is not necessary to show an intent to abandon on the part of the landowner.

The ZBA further explained that under Section 14-305(10)(c) of the Zoning Code, a non-conforming "structure" or "use" that is voluntarily demolished "shall be reconstructed in compliance with the Zoning Code for the zoning district where it is located." The ZBA determined that demolition of the existing structure on the property would result in extinguishment of the prior three-family use, and any subsequent development would be required to comply with the RSA-3 district's standards, which do not permit multi-family dwellings.[2]

---

[2] The ZBA further explained that the proposed development was prohibited on the independent ground that it was an impermissible expansion of the prior three-family use. To that end, the ZBA stated, even where replacement of a non-conforming use or structure is permitted, (in cases of destruction by act of God or a third party), the replacement structure must not "exceed the non[-]conforming area or height of the destroyed structure." Section 14-305(10)(b) of the Zoning Code.

Here, the ZBA determined, Applicant proposes to construct a three-story, 4,500 square-foot building that would be deeper and three feet taller than the existing structure and would **(Footnote continued on next page…)**

10

Applicant appealed the ZBA's decision to the trial court. Without taking additional evidence, the trial court affirmed. This appeal by Applicant followed.[3]

## II. Discussion

As fact-finder, the ZBA is the sole judge of the credibility and weight of the evidence presented. Liberties Lofts LLC v. Zoning Bd. of Adjustment, 182 A.3d 513 (Pa. Cmwlth. 2018). As a result, the ZBA is free to reject even uncontradicted evidence that it finds lacking in credibility. Id. The ZBA is free to

---

**(continued…)**

include a rear deck, three roof decks, and three pilot houses. The ZBA stated Applicant did not specify how much larger (in terms of depth and square footage) the new structure would be than the existing structure. Further, the objectors to Applicant's proposed development described the proposed development as "massive" and "more than double the size of the existing house." ZBA Op., Concl. of Law No. 22. Further, in an email to the ZBA after the hearing (the ZBA held the record open for two weeks after the hearing), area resident Robert Spear stated, "a structure in excess of 4,500 square feet is planned to replace an improvement of 2,872 square feet." Id. The ZBA stated that Applicant did not dispute the objectors' contention that the proposed structure would be substantially larger than the existing structure. Therefore, the ZBA stated, the record suggested that the proposed development would increase the area and height of the existing non-conforming use. As a result, the ZBA concluded that the proposed three-family use was prohibited on the independent ground that it was as an impermissible expansion of a prior non-conforming use.

Further, the ZBA determined that Applicant did not establish entitlement to the requested variances from the Zoning Code's side yard and accessory parking requirements. To that end, the ZBA concluded Applicant did not establish that denial of the side yard variance would result in unnecessary hardship nor did Applicant satisfy the remaining criteria for the grant of a variance. Additionally, the ZBA determined that the requested variance for parking was not the minimum variance necessary to afford relief, and the grant of the variance would adversely impact public health, safety and welfare by increasing congestion and exacerbating existing parking shortages in the area. For these reasons, the ZBA denied the requested variances.

[3] Because the parties presented no additional evidence after the ZBA's decision, our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment, 42 A.3d 1178 (Pa. Cmwlth. 2012).

11

accept or reject, in whole or part, the testimony of any witness. Id. Our review of the ZBA's factual findings is limited to determining whether the ZBA's findings are supported by substantial evidence. Id.

When performing a substantial evidence analysis, we must view the evidence in the light most favorable to the party that prevailed before the fact-finder. Id. It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is evidence to support the findings actually made. Id. If there is, an appellate court may not disturb the findings. Id.

### A. Contentions

Applicant argues that the ZBA erred in determining that the Zoning Code prohibits the replacement of an existing, lawful non-conforming use. Applicant asserts that the property is improved with a lawful, non-conforming, three-family dwelling. Applicant contends that it enjoys a vested property right in the three-family use, which is constitutionally protected and cannot be abrogated unless it constitutes a nuisance, is abandoned by the owner, or is extinguished by eminent domain. Pappas v. Zoning Bd. of Adjustment of City of Phila., 589 A.2d 675 (Pa. 1991); PA Nw. Distribs., Inc. v. Zoning Hearing Bd. of Twp. of Moon, 584 A.2d 1372 (Pa. 1991); see also Money; Keystone Outdoor Advert. v. Dep't of Transp., 687 A.2d 47 (Pa. Cmwlth. 1996).

Here, Applicant maintains, the property is not a nuisance, has not been abandoned, and was not taken through eminent domain. Applicant argues it filed a zoning application to continue the non-conforming use in a replacement structure.

12

Unless prohibited by ordinance, Applicant asserts, a non-conforming use may be replaced. Here, Applicant contends, it has not voluntarily destroyed the structure on the property; thus, the ZBA's reliance on Section 14-305(10)(c) of the Zoning Code is misplaced.

Applicant asserts its pre-purchase diligence confirmed that the three-story building on the property is configured as a three-family dwelling with an apartment on each floor, and, after inspection by L&I, the City issued a certification statement confirming the property's existing three-family use as lawful. Applicant contends the certification statement proves the existence of a non-conforming use. Hunterstown Ruritan Club v. Straban Twp. Zoning Hearing Bd., 143 A.3d 538 (Pa. Cmwlth. 2016) (citing DoMiJo, LLC v. McLain, 41 A.3d 967 (Pa. Cmwlth. 2012)).

Applicant maintains that all of the evidence shows it intends to continue to use the property as a three-family dwelling. After it purchased the property, Applicant argues, it applied for, and was issued, a housing inspection license for a three-family dwelling. Applicant asserts it continued to maintain the three-family configuration of the property, and it completed repairs to eliminate notices of violations. Applicant contends the zoning application it filed, which seeks to continue the three-family use, is further evidence that it has no desire or intent to abandon the three-family use.

Applicant points out that the objectors offered testimony that, as a result of a foreclosure, the structure on the property remained vacant for a period.

13

Applicant maintains when a vacancy occurs as a result of financial hardship, it is improper to infer a discontinuance of use. TKO Realty, LLC v. Zoning Hearing Bd. of City of Scranton, 78 A.3d 732 (Pa. Cmwlth. 2013). Applicant argues the objectors also offered an unsupported allegation that, as a result of the property's foreclosure, there was an interruption in the issuance of a housing inspection license. Even if this is true, Applicant asserts, failure to license a non-conforming use cannot be construed as abandonment of the use. Id. In fact, Applicant asserts, this Court held that a nine-year gap in multi-family occupancy, together with a five-year gap in licensing, was insufficient to show an intent to abandon a non-conforming use. Wissahickon Interested Citizens Ass'n Inc. v. Phila. Zoning Bd. of Adjustment (Pa. Cmwlth., No. 1808 C.D. 2013, filed June 26, 2014), 2014 WL 2927267 (unreported).

In support of its decision here, Applicant points out, the ZBA relied on Section 14-305(10)(c) of the Zoning Code and this Court's decisions in Korngold and Keebler. Applicant argues the ZBA's reliance on this authority is misplaced. Specifically, Applicant asserts Section 14-305(10)(c) of the Zoning Code pertains to "Destroyed Structures," and the criteria that apply to replacement of a "Destroyed Structure" that has a non-conforming element. If the structure is destroyed by an owner's voluntary act, the non-conforming element may not be resumed. Applicant asserts the distinction between this case and Korngold and Keebler is that no structure was demolished here. Because there is no destroyed structure, Applicant contends, Section 14-305(10) of the Zoning Code does not apply. Unlike the owners in Korngold and Keebler, Applicant maintains, it did not destroy the structure on the property. Applicant argues that, with the cosmetic

14

improvements described by its Owner, the property's three-family, non-conforming use can resume. Applicant asserts there is no evidence to suggest that it has, or intends to, abandon the existing three-family use.

Applicant maintains Pennsylvania law is clear: municipal ordinances may adopt restrictions on the reconstruction of non-conforming uses. AFSO Builders. In fact, an ordinance may prohibit reconstruction. However, "[s]uch restrictions … must be specifically stated; in their absence an owner seeking to continue a valid non-conforming use must be permitted to do so." Zeiders v. Zoning Hearing Bd. of Adjustment of W. Hanover Twp., 397 A.2d 20, 21 (Pa. Cmwlth. 1979) (citing Kellman v. McShain, 85 A.2d 32 (Pa. 1951)).

Absent a specifically stated restriction, Applicant maintains, courts allow owners to demolish and reconstruct. Thus, razing a building with a non-conforming use does not eliminate the landowner's right to continue that use in a new building. Amoco Oil Co. v. Ross Twp. Zoning Hearing Bd., 426 A.2d 728 (Pa. Cmwlth. 1981); see also Trettel v. Zoning Hearing Bd. of Harrison Twp., 658 A.2d 741 (Pa. 1995). Applicant argues these cases were cited in Money. In that case, as here, Applicant asserts, no structure was demolished. Instead, the owner sought permission to replace one non-conforming structure with another one. Because the zoning ordinance in that case did not specifically prohibit rebuilding a non-conforming structure, Applicant contends, the owner was not prohibited from doing so *per se*, and the same rule should apply here.

15

## B. Analysis

"A municipal ordinance prohibiting the restoration of a non[-]conforming structure when it is eliminated is a valid exercise of the police power." Adsmart Outdoor Advert., Inc. v. L. Merion Twp. Zoning Hearing Bd. (Pa. Cmwlth., No. 173 C.D. 2012, filed December 5, 2012) (unreported), slip op. at 20, 2012 WL 8666773 at *10 (citing Korngold). Thus, in Korngold, this Court explained: "The reconstruction of a structure for a specific non[-]conforming use <u>is not allowed if the zoning ordinance specifies that such construction is prohibited</u>." Id. at 1281 n.4 (citing AFSO Builders) (emphasis added).

Section 14-305(10) of the Zoning Code, titled "Reconstruction of Destroyed Structures," provides, in its entirety (with emphasis added):

(a) **Applicability.**

<u>Notwithstanding the provisions of § 14-305(1) (Purpose) through § 14-305(9) (Non[-]conforming Parking or Site Improvements) above</u>, the provisions of this § 14-305(10) (Reconstruction of Destroyed Structures) shall apply when non[-]conforming buildings, uses, lots, parking, site improvements, or accessory signs are destroyed or rendered unusable by fire or an act of God or a third party over which the owner has no control.

(b) **Rights Following Destruction.**

Following destruction, as defined in § 14-305(10)(a) (Applicability): (a) a replacement structure that does not reduce the non[-]conforming setbacks or exceed the non[-]conforming area or height of the destroyed structure may be constructed, and (b) the non[-]conforming use that existed prior to the destruction may be re-established, and (c) the property need not provide any more off-street parking spaces or loading areas than the property had before the destruction. These provisions

16

shall apply only if reconstruction begins within three years after the destruction and is completed without interruption; otherwise the building, use, lot, parking, site improvement, or accessory sign may only be reconstructed in compliance with the Zoning Code for the zoning district where it is located.

(c) **Voluntary Destruction.**

Any non[-]conforming structure, use, lot, parking area, site improvement, or accessory sign destroyed through means other than described in § 14-305(10)(a) (Applicability) shall be reconstructed in compliance with the Zoning Code for the zoning district where it is located.

Here, in its application for the zoning/use registration permit submitted to L&I, Applicant provided the following "BRIEF DESCRIPTION OF WORK/CHANGE": "FOR THE COMPLETE DEMOLITION OF ALL EXISTING STRUCTURES AND FOR THE ERECTION OF A NEW THREE UNIT MULTI-FAMILY DWELLING WITH PORCH, REAR DECK AND ACCESSORY ROOF DECK(S) WITH PILOT HOUSE(S) TO ENCLOSE STAIR AND LANDING ONLY AS PER PLANS[.]" Reproduced Record (R.R.) at 420a (emphasis added); see F.F. No. 1. Testimony by Applicant's Owner and representations by Applicant's Counsel before the ZBA were consistent with this zoning request. R.R. at 16a, 26a, 29a.

In resolving the non-conforming use issue, the ZBA made the following relevant determinations (with underlined emphasis added):

1. The proposed three-family dwelling is not a permitted use in the [p]roperty's RSA-3 residential zoning district. …

17

2. Applicant contends that no use variance is required because the proposed three family dwelling is a legal non-conforming use that may be continued by right, even in a replacement structure.

* * * *

4. The [ZBA] concludes that the proposed multi-family dwelling is not permitted as continuation of a non[-]conforming use ….

### I. Non[-]conforming Use

* * * *

7. Appellate decisions addressing a property owner's rights following voluntary destruction of a non[-]conforming structure or use are consistent with the [Zoning] Code language.

8. In [Korngold], two property owners argued they should be permitted to replace a non[-]conforming sign demolished by a tenant because they 'never intended to abandoned the use.' [Id. at 1280.] The Commonwealth Court affirmed a ZBA decision rejecting their claim, noting that 'while proof of intent to relinquish the use voluntarily is necessary in an abandonment case, such proof is not necessary where the structure is destroyed because the right to reconstruct a structure is extinguished by operation of law.' [Id.] The [Court] held that 'when that sign ceased to exist, the non[-]conforming use of that sign was also extinguished.' [Id. at 1281]

9. The Korngold Court noted that the [ZBA], in rejecting the property owners' claim, had relied upon a [former] section of the [Zoning Code] providing:

> Where a structure or any portion thereof is demolished other than by fire, act of God or under legal condemnation, it shall be rebuilt only in accordance with the area, height, floor area and bulk regulations of the district

in which it is located; provided, that where such demolition constitutes two-thirds or more of the gross floor area of the structure, it shall, upon reconstruction, conform to the use regulations of the district in which it is located.

Id. at [1278 n.1] [(emphasis omitted)]; [s]ee also [AFSO Builders] (reconstruction of a structure for a specific non[-]conforming use is not allowed if the zoning ordinance specifies that such construction is prohibited.).

10. Similarly, in [Keebler], the Court held that a landowner had abandoned a non[-]conforming warehouse use by razing the building that housed the use. The Court noted that the applicable zoning ordinance provided abandonment would be presumed where the owner had 'physically changed the building or structure or its fixtures or equipment in such a way as to clearly indicate a change in use or activity to something other than the non[-]conforming use.' [Id. at 674.] The Court said the landowner had 'physically changed the structure of the building by demolishing it which clearly indicates a change in use.' [Id.] Citing Korngold, the Court determined it was not necessary to show intent to abandon 'where the structure is destroyed because the right to reconstruct a structure is extinguished by operation of law.' [Keebler, 998 A.2d at 674[;] [s]ee also [5542 Penn, slip op. at 15, 2016 WL 7369097 at *8.] (non[-]conforming status of demolished structures was extinguished and new construction required to comply with [ordinance] where ordinance provided that 'willful destruction' would result in 'forfeiture of non[-]conforming status.')

11. In support of its argument that reconstruction of the non[-]conforming three family dwelling at the [p]roperty is permitted by right, Applicant has cited [Money]. Its reliance on that decision is misplaced.

12. In Money, a property owner sought to replace a deteriorated chicken coop with a smaller non[-]conforming structure. The applicable zoning ordinance

19

provided for termination a non[-]conforming use where 'fifty percent (50%) or more of the bulk of all buildings, structures and other improvements on the lot' were damaged or destroyed. [Id. at 735 n.4.] The Court noted that the lot in question also contained a home and that razing the non[-]conforming chicken coop did not amount to demolition of fifty percent or more of all buildings on the lot. The ordinance's termination provision accordingly did not apply. In the absence of a specific statutory prohibition on reconstruction, the township was required to show that the '[l]andowner intended to abandon the non[-] conforming use.' [Id. at 737].

13. Significantly, the Money Court acknowledged that replacement of a demolished non[-]conforming use may be prohibited if the prohibition is specifically stated in the applicable zoning ordinance.

> We recognize that, where a building has become so dilapidated that complete reconstruction is necessary, a zoning ordinance **may** bar reconstruction in the interest of the public health, safety[,] morals or general welfare[.] However, such a restriction must be specifically set forth in the ordinance and, absent such regulations, a landowner seeking to continue a valid non[-] conforming use must be permitted to do so.

[Money, 755 A.2d at 738 (citations omitted)].

14. The relevant [case law] is therefore consistent and clear. Where a structure housing a non[-]conforming use is voluntarily demolished, a landowner may be prohibited from resuming the use in a replacement structure -- *provided* the prohibition is specifically stated in the applicable zoning ordinance. In these circumstances, the prior non[-]conformity is extinguished 'by operation of law;' it is not necessary to show an intent to abandon on the part of the landowner.

20

15. The [Zoning Code], at §14-305(10)(c), specifically provides that <u>a non[-]conforming 'structure' or 'use' that is voluntarily demolished 'shall be reconstructed in compliance with the Zoning Code for the zoning district where it is located</u>.'

16. <u>Demolition of the existing structure at the [p]roperty will therefore result in extinguishment of the prior three-family use. Any subsequent development must comply with applicable RSA-3 use and dimensional standards, which standards do not permit multi-family dwellings</u>.

Concls. of Law Nos. 1-2, 4, 7-16 (emphasis in original).

Based on our review of the clear language of the Zoning Code and relevant case law, we discern no error in the ZBA's determinations that Applicant's proposed voluntary demolition of the existing non-conforming multi-family dwelling on the property would extinguish the non-conforming use. Section 14-305(10)(c) of the Zoning Code; see <u>Korngold</u>. As a result, any reconstruction would require compliance with Zoning Code provisions for the RSA-3 district, which does not permit multi-family dwellings. Sections 14-305(10)(c), 14-602-1 of the Zoning Code.

Moreover, as the ZBA explained, the existence of a Zoning Code provision that requires that a voluntarily destroyed non-conforming structure be rebuilt in compliance with the Zoning Code, distinguishes this case from <u>Money</u> and the cases it cited, upon which Applicant relies here. In those cases, the ordinances contained no specific provisions barring the rebuilding of a voluntarily demolished non-conforming structure.

21

Also distinguishable is this Court's unreported decision in Wissahickon Interested Citizens where the sole issue was whether a property owner abandoned a non-conforming use by failing to maintain a rental license and failing to rent a portion of his triplex. Wissahickon Interested Citizens did not involve the voluntary destruction of a non-conforming structure as is the case here.

Further, although Applicant focuses on the fact that no intent to abandon the non-conforming structure was proven here, in Korngold, this Court, speaking through Judge Pellegrini, explained (with emphasis added):

> The [applicants] correctly contend that a lawful non[-]conforming use does not lose that status unless the use is extinguished by abandonment, and a finding of abandonment requires proof of an intent to relinquish the use voluntarily. However, while proof of intent to relinquish the use voluntarily is necessary in an abandonment case, such proof is not necessary where the structure is destroyed because the right to reconstruct a structure is extinguished by operation of law.

Id. at 1280 (citation and footnote omitted); see also Keebler.

Here, because it is clear that Applicant's proposal contemplates demolition of the existing, non-conforming structure, no error is apparent in the ZBA's determination that such demolition would extinguish Applicant's right to reconstruct a multi-family dwelling on the property. Section 14-305(10)(c) of the Zoning Code. Applicant's argument that it is entitled to rebuild the structure because it *has not yet* demolished the existing structure is flawed given that Applicant sought permission from the ZBA to do just that. Based on the rationale

22

expressed in Korngold, Applicant's reliance on cases that involve abandonment of non-conforming uses is misplaced.

In addition, in Korngold, this Court rejected the applicants' reliance on our Supreme Court's decision in Moon, cited by Applicant here, stating (with underlined emphasis added):

> The [applicants] argue that Moon holds that the discontinuance of a lawful pre-existing non[-]conforming use is per se confiscatory and violative of Article 1 of the Pennsylvania Constitution, which recognizes the inherent right of citizens to possess and protect property. In Moon, an ordinance was adopted which imposed restrictions on the location of adult bookstores. The ordinance also contained an amortization clause which required pre-existing businesses to comply with the ordinance within 90 days from the date the ordinance became effective. The owner of the bookstore challenged the validity of the ordinance, arguing that it was confiscatory and violative of the constitution. Our Supreme Court agreed, finding that in essence, the ordinance required the plaintiff to relocate his entire business within 90 days. Based upon that finding, our Supreme Court held that *amortization* and *discontinuance* of a non[-]conforming use was confiscatory.
>
> Specifically, in Moon, our Supreme Court noted that, '[t]he effect of the amortization provision herein is to deprive appellant of the lawful use of its property in that the ordinance forces appellant to cease using its property as an adult book store within 90 days.' Moon, [584 A.2d at 1376]. <u>Because no amortization provision is involved in the present case but only the cessation of a use, the holding in Moon simply has no applicability whatsoever</u>.

Korngold, 606 A.2d at 1281 (emphasis in original).

23

For all of the foregoing reasons, we affirm.[4]



ROBERT SIMPSON, Judge

---

[4] Based on our determination that Applicant's proposed voluntary demolition will extinguish the non-conforming use of the structure, we need not address Applicant's arguments that the ZBA erred in determining that Applicant's proposed replacement structure constitutes a prohibited expansion of the existing, non-conforming use, and that the ZBA erred in determining that Applicant was not entitled to variances from the Zoning Code's side yard width and off-street parking requirements for its proposed reconstructed structure.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renaissance Real Estate
Holdings, L.P.,

                Appellant

                v.

City of Philadelphia Zoning
Board of Adjustment

:
:
:
:
:   No. 1410 C.D. 2017
:
:
:
:
:

## **O R D E R**

    **AND NOW**, this 6th day of December, 2018, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.

                                     

                                 ROBERT SIMPSON, Judge