# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of: Slobodan Vucetic and    :
Zivjena Vucetic    :
   :
From the Decision of:    :    No. 1454 C.D. 2023
Zoning Board of Adjustment    :
   :
Appeal of: Slobodan Vucetic and    :
Zivjena Vucetic    :    Argued: October 7, 2025


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MATTHEW S. WOLF, Judge


**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE WOLF                                   FILED: November 4, 2025


       Slobodan Vucetic and Zivjena Vucetic (Objectors) appeal from the November 8, 2023 order of the Court of Common Pleas of Philadelphia County (common pleas). Common pleas affirmed a decision of the Zoning Board of Adjustment (Board) of the City of Philadelphia (City) that granted a use variance to the Overseers of Penn Charter School (Applicant) for further development of the William Penn Charter School on Applicant's property (School Property). Upon review, we affirm the order of common pleas.

       Applicant owns the property at 3000 West School House Lane in the City. The School Property is in a residential zoning district, but it has been the main campus of the William Penn Charter School for more than 100 years. Applicant also owns and uses the property at 3850 The Oak Road in the City (the Timmons House

Property), which is adjacent to the upper portion of the School Property and contains a single historic home and a small parking area.

In 2022, Applicant submitted a development plan to the City's Department of Licenses and Inspection ("L&I"). The proposed development sought to demolish the existing Lower School and Field House buildings on the School Property, erect a new structure for educational use on the School Property, and remove some accessory parking spaces and create new parking spaces. This included the creation of additional parking spaces adjacent to the Timmons House Property. The new educational development would require the granting of a variance because the zoning district permits only single-family homes by right.

On May 24, 2022, L&I refused Applicant's development application on the bases that the residential zoning of the School Property prohibited educational uses, and that 488 parking spaces were required under the Philadelphia Zoning Code (Zoning Code), instead of the proposed 319 spaces. Applicant filed an Appeal to the Board from L&I's refusal, seeking various relief from the Zoning Code, including a use variance for the educational construction and a variance from the 488 required parking spaces. Applicant explained that it was entitled to a variance because the physical layout of the School Property and its history of use create a hardship. Later, L&I issued a revised notice of refusal that contained additional refusals related to amounts of impervious coverage site clearing and earth movement within a steep slope zone. Those later refusals are not at issue in this appeal.

The Board held hearings on October 26 and November 30, 2022. At the start of the hearing, counsel for Applicant made several statements regarding the requested relief.[1] He explained that Applicant's property had been used as a private

---

[1] Applicant's Chief Financial Officer, Hal Davidow, later testified and adopted counsel's statements on the record as his own testimony. *See infra* at 3.

school since 1903, and because it does not conform with the district's residential use, the property has required use variances every time any development is conducted. R.R. 178a. Counsel explained the proposed demolition and new School Property building, and how the proposed parking, including on the Timmons House Property, would serve that overall project.

Applicant first presented the testimony of Andreas Heinrich, a traffic engineering expert. Heinrich testified regarding two traffic impact studies Applicant conducted. He opined that the requested 351 total parking spaces would be sufficient for the needs of the proposed development. R.R. at 181a. He also opined that the development would not significantly change traffic levels, and that because of a redesign in the entry to the new parking area on the Timmons House Property, the development would actually decrease traffic on The Oak Road where Objectors' property is located. *Id.* at 182a. On cross-examination, Heinrich acknowledged that the proposed 55 parking spaces on the Timmons House Property would not be restricted to any specific type of user (such as students) or have a time limit. *Id.* But he denied that this increase in parking off The Oak Road would cause drivers to circle the campus looking for a parking spot, because they would quickly become familiar with where parking was available and would drive directly there. *Id.* at 183a.

A second expert witness, Brian Spray, a licensed engineer, testified next for Applicant. He elaborated on the earlier testimony about the redesigned traffic flow and opined that it would improve traffic flow. *Id.* at 184a-86a.

Finally, Applicant presented the testimony of Hal Davidow, Chief Financial Officer for Applicant. He described Applicant's community outreach efforts, which included revising the original plans by removing 30 proposed parking

3

spaces, moving the parking area further back from The Oak Road, and installing a community park and screening berm. R.R. at 187a. Davidow affirmed that the statements Applicant's counsel had made about the project during the hearing were true and correct, and that Davidow would truthfully make the same statements himself. *Id.* On cross-examination, he testified that the Timmons House Property is used for occasional events like faculty meetings and parent or alumni gatherings. *Id.*

Objectors opposed only one aspect of the proposed development—the proposed parking addition on the Timmons House Property, across the street from their property. R.R. at 189a. Mr. Vucetic testified that in his view, that new parking would transform the Timmons House Property from an occasionally used venue to a continually used parking lot, which would increase traffic and change the character of the neighborhood. *Id.* at 190a-91a. Mr. Vucetic stated that other areas of the School Property have been proposed for parking use in prior versions of the plan and could be used for parking instead of the Timmons House Property. *Id.* at 191a. He stated that using that property as a parking area would be the first institutional use of property along The Oak Road and would be inconsistent with the residential character of the neighborhood. *Id.* at 192a. He stated his belief that the number of proposed parking spaces was already too large, and the requested 355 spaces were not truly necessary for the proposed development. *Id.* at 193a.

Mrs. Vucetic testified that, in her view, Applicant's revisions to the plan in response to community comments do not adequately address Objectors' concerns. *Id.* at 194a. Specifically, she stated that the proposed screening berm may partially obscure the visual impact of the parking area, but it would not adequately screen direct neighbors or prevent light pollution from installed lighting, which would adversely affect the aesthetics of the neighborhood. *Id.*

4

The Board heard comments from the public both supporting and opposing the application. Sarah Banh of the City's Planning Commission testified that the Commission recommended granting the variance, noting that "[t]he school is an existing non-conforming use and the proposed improvements to the site do not increase that non-conformity." R.R. at 195a.

At a December 21, 2022 hearing, the Board voted 3 to 1 in favor of granting Applicant's requested relief. In a later written decision, the Board credited the evidence and testimony presented by Applicant. Board Decision at 24, Conclusion of Law No. 23. The Board made the following relevant conclusions:

> 12. In the present case, the Board finds that the Applicant has met the criteria for an unnecessary hardship, not created by the Applicant, for the requested use variances.
>
> 13. The subject property is a sprawling campus measuring 1,327,935 square feet with a history of educational use exceeding 100 years. The Applicant . . . seeks to demolish part or all of two existing structures and construct a new building to house its Lower School. The project would also reconfigure and expand existing parking, which would result in a net increase in on-campus parking spaces.
>
> 14. Given the longstanding educational use of the property, the Board found that conversion of the property to residential single-family use would certainly pose a hardship. As noted by the Planning Commission, the Applicant is also not proposing an expansion of the existing non-conforming use with this project.
>
> 15. With regard to the use variance for insufficient minimum parking spaces, the Board found that the Applicant had clearly demonstrated through testimony (including expert testimony) and evidence that the proposed number of spaces would satisfactorily serve the various populations at the school. The Board noted that the Applicant even took the extra step of securing additional

5

spaces at a neighboring church lot in the event that more parking was needed . . . .

. . . .

18. Furthermore, the Board concluded that the Applicant met [its] burden with respect to demonstrating that the requested variances were the least minimum necessary to afford relief given the substantiated hardships at the subject property.

*Id.* at 22-23, Conclusions of Law Nos. 12-15, 18.

Objectors appealed to common pleas, which affirmed. Objectors now appeal to this Court.

On appeal,[2] Objectors raise two issues, which we rephrase for clarity: (1) whether the Board erred in granting a variance from the minimum parking standards because Applicant did not show hardship to support a variance, and/or any hardship is self-imposed; and (2) whether the Board erred in granting relief with respect to an accessory structure (the Timmons House Property) when the Zoning Code requires that accessory uses must be on the same lot as the principal use.

---

[2] In cases where common pleas does not take additional evidence, this Court reviews the decision of the Board, not the decision of common pleas. *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 692 n.10, 695 (Pa. Cmwlth. 2020). We evaluate whether the Board committed an error of law, whether it violated the appellant's constitutional rights, whether it violated its practice and procedure, or whether its findings of fact were supported by substantial evidence. *See* 2 Pa. C.S. § 754. The Board abuses its discretion "only if its findings are not supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

We defer to the Board's findings, viewing the evidence "in the light most favorable to the party that prevailed before the factfinder." *Renaissance Real Estate Holdings, L.P. v. Phila. Zoning Bd. of Adjustment*, 199 A.3d 977, 983 (Pa. Cmwlth. 2018). We particularly defer to the Board's determination that a variance applicant satisfied the unnecessary hardship criterion. *Marshall v. City of Phila*, 97 A.3d 323, 333 (Pa. 2014). An "appellate court errs when it substitutes its judgment on the merits for that of a zoning board." *Id.* at 331.

It is well settled that an applicant for a variance bears the burden of proof as to each requirement of the zoning ordinance. *Metal Green Inc. v. City of Phila*, 266 A.3d 495, 506 (Pa. 2021). One requirement is that "[t]he denial of the variance would result in an unnecessary hardship," which hardship "was not created by the applicant." Zoning Code § § 14-303(8)(e)(.1). When, as here, the applicant seeks a use variance, the hardship must be unique to the property at issue, not arising from the impact of the zoning regulations on the entire district. *See Valley View*, 462 A.2d at 640; Zoning Code § 14-303(8)(.2)(.a). "In evaluating hardship the use of adjacent and surrounding land is unquestionably relevant." *Valley View*, 462 A.2d at 641. To constitute unnecessary hardship, the property's unique physical circumstances or conditions must make it impossible for the property to strictly comply with the Zoning Code while retaining viable economic use, thus requiring a variance. Zoning Code § § 14-303(8)(.2)(.b).

Objectors argue Applicant did not present adequate, substantial evidence demonstrating an unnecessary hardship. They acknowledge the School Property's nonconforming educational use since before the Zoning Code existed, but they argue this does not itself constitute an unnecessary hardship to allow more development. Objectors characterize Applicant's request as seeking dimensional variance relief. *See* Objectors' Br. at 17-19. Objectors explain they are not seeking to require Applicant to use the School Property for a residential use; they object only to Applicant's desire for greater educational development that, in turn, requires variances from the parking requirements of the Zoning Code. Objectors' primary concern is with the addition of parking on the Timmons House Property. They claim Applicant could use other areas of the School Property for the additional parking instead. They argue any hardship arising from parking limitations is self-created,

7

motivated only by Applicant's desires to maximize use of the property rather than any particular unique physical characteristic of the property, and not a basis for a variance.

In response, Applicant points out that it is seeking use variances, not dimensional variances. *See* Board Decision, Conclusion of Law No. 15. It claims this is consistent with the School Property's nonconforming use and corresponding need for use variances any time nonresidential development occurs at the property, and that Applicant has been routinely granted such variances in the past. Applicant argues that Objectors mischaracterize the relief sought in two ways. First, Applicant is seeking variance relief so it can install *fewer* parking spaces than the Zoning Code would ordinarily require. It is not seeking to maximize parking on its property, but has worked diligently with community input and redesigns to *minimize* the increase in parking. Applicant points out that, though Mr. Vucetic stated his belief that the development could be accomplished with even fewer new parking spaces, or with parking located elsewhere on the property, the Board was free not to credit those assertions. Second, the variance relief sought—a use variance for nonresidential use and a use variance to depart from the Zoning Code's corresponding parking requirement—is not specific to the Timmons House Property, and has nothing to do with the *location* of the additional parking, which appears to be Objectors' main concern. Applicant clarifies that the unnecessary hardship it demonstrated is the requirement to comply with the residential provisions of the Zoning Code on a property that has historically been a school since long before those provisions.

We agree with Applicant that Objectors mischaracterize the variance relief granted. Applicant was not required to minimize parking impacts or show that it had sited the additional parking at an optimal location for all concerned. To merit

8

a variance, it was required to show that unique aspects of Applicant's property make residential use—and compliance with parking requirements—impossible, which Applicant did show. Counsel explained that the historic use of the School Property and the Timmons House Property are inconsistent with the applicable residential zoning, and Applicant's CFO adopted that testimony. Applicant's expert witnesses explained how Applicant arrived at a parking reallocation that would serve the needs of the development, and sought a corresponding variance to allow *fewer* than the required number of parking spaces. The Board credited that testimony. We reject Objectors' reliance on dimensional variance decisions, since use variances were sought here. *Cf. Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011). We also distinguish a decision Objectors cite where the developer relied on the unique nature of surrounding properties–as opposed to the subject property—for variance relief. *See Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 41 (Pa. Cmwlth. 2011). Here, Applicant relies on the unique nature and historical use of its own property, and how that differs from the conforming residential surroundings. This is a permissible consideration when evaluating hardship. *Valley View*, 462 A.2d at 641. This, together with the credited evidence, met Applicant's burden to show an unreasonable hardship for the use variances requested.

Regarding Objectors' second issue—whether the Timmons House Property is an accessory use that, per the Zoning Code, must be located on the same lot as the principal use—we agree with Applicant that Objectors waived this issue by failing to raise it before the Board. Issues not raised before the Board are waived. *Callowhill Neighborhood Ass'n v. City of Phila. Zoning Bd. of Adjustment*, 118 A.3d 1214, 1221 n.14 (Pa. Cmwlth. 2015) (en banc). Objectors claim they preserved this

9

issue when they argued to the Board that "expanding [the] parking lot on the Timmons [House Property] transforms the character of the neighborhood, of The Oak Road corridor . . . into more of an institutional use." Objectors' Br. at 26 n.9 (quoting R.R. at 190a). But that statement is relevant to the issue of whether the variance relief would impact the character of the neighborhood, which is a separate consideration that Objectors do not raise on appeal. We find no instance where Objectors discussed before the Board whether the Timmons House Property is a separate lot or an accessory use, so we will not disturb the Board's decision on that basis.[3]

For the foregoing reasons, the Board did not err or abuse its discretion in granting the requested variance relief. Accordingly, we affirm the order of common pleas.

_____
MATTHEW S. WOLF, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[3] Even if the separate lot/accessory use issue was not waived, we would likely conclude that the Board did not err in this respect. "[A] proprietor of several units of land, each in successive juxtaposition to another, may develop them into a single lot and they will be accepted as such in matters involving zoning," and this does not violate the Zoning Code's prohibition of off-lot accessory uses. *Del Guercio v. Zoning Bd. of Adjustment*, 187 A.2d 165, 166 (Pa. 1963). Applicant acknowledges that the Timmons House Property and the School Property are separate parcels, but they are adjacent and used together by the same owner for the same purpose. Thus, to the extent the Timmons House Property can be described as hosting an accessory use, this is permissible under the Zoning Code.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of: Slobodan Vucetic and   :
Zivjena Vucetic                             :
                                       :

From the Decision of:            :   No. 1454 C.D. 2023
Zoning Board of Adjustment   :
                                       :

Appeal of: Slobodan Vucetic and   :
Zivjena Vucetic                             :

## **O R D E R**

AND NOW, this 4th day of November 2025, the November 8, 2023 order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is AFFIRMED.

 

_____
MATTHEW S. WOLF, Judge