Society Hill Towers Owners :
Association, Bruce Holberg, :
Ben Avicolli, and Maggie Shultz, :
     Appellants :
         :
    v.     :
         :
City of Philadelphia and Philadelphia :
Zoning Board of Adjustment, and Dock :
Street Residential L/CAL LLC, Society :
Hill Hotel XLI Owner LLC, Society :
Hill Parking Owner LLC, and : No. 1432 C.D. 2019
Society Hill Land Owner LLC : Argued: November 12, 2020

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
    HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON    FILED: December 18, 2020

   Society Hill Towers Owners Association, Bruce Holberg, Ben Avicolli, and Maggie Schultz (collectively, Towers) appeal the September 18, 2019 order of the Court of Common Pleas of Philadelphia County (trial court) that denied Towers' appeal from a decision of the Philadelphia Zoning Board of Adjustment (ZBA) to issue a conditional zoning permit for proposed construction at 1 Dock Street, Philadelphia (Property). Upon review, we affirm.

The Property is an irregularly-shaped lot bounded by Walnut Street, Front Street, Dock Street, and South 2nd Street in Philadelphia. *See* Findings of Fact and Conclusions of Law of the ZBA dated July 22, 2019 (ZBA Decision) at 1, Findings of Fact (F.F.) 2. The 1985 construction of the existing four-story hotel that currently stands on the Property required two variances: one regarding the size of 185 accessory parking spaces, and the other regarding the parking garage ingress/egress. *See* ZBA Decision at 1-2, F.F. 3-4; Trial Court's Pennsylvania Rule of Appellate Procedure 1925(a) Opinion dated February 14, 2020 (Trial Court Opinion) at 1. The ZBA granted the requested variances without provisos or conditions on March 7, 1985. *See* Trial Court Opinion at 1; ZBA Decision at 2, F.F. 5.

On March 29, 2018, the title owner of the Property, Society Hill Hotel XLI Owner LLC, recorded a Declaration of Condominium pursuant to the Uniform Condominium Act[1] (Condominium Act) to establish a condominium form of ownership for the Property with three condominium units, Units One, Two, and Three. *See* Trial Court Opinion at 2; ZBA Decision at 2, F.F. 6; *see also* Declaration of Condominium of One Dock Street Condominium (Declaration of Condominium), Reproduced Record (R.R.) at 42a-114a. Subsequent to the filing of the Declaration of Condominium: Society Hill Hotel XLI Owner LLC became the owner of Unit One, consisting of the existing hotel building, but not the parking below; Society Hill Parking Owner LLC became the owner of Unit Two,[2] consisting of the

---

[1] 68 Pa.C.S. §§ 3101-3414.

[2] On December 20, 2018, the Declaration of Condominium was amended to divide Unit Two into Unit Two-A and Unit Two-B, technically resulting in four condominium units overall. *See* Amended and Restated Declaration of Condominium of One Dock Street Condominium (Amended Declaration of Condominium), R.R. at 116a-213a. Unit Two-A is meant to provide

Property's underground parking garage; and Society Hill Land Owner LLC became the owner of Unit Three, the vacant land portion of the Property that is the site of the planned 31-floor addition to the existing hotel (collectively, Owners). *See* R.R. at 112a, 122a, 190a, 238a & 278a.

On May 2, 2018, Unit Three Owner Society Hill Land Owner LLC applied to the Philadelphia Department of Licenses and Inspections (L&I) for a permit to construct the tower addition on the Property. *See* R.R. at 336a-37a. L&I issued this permit on August 9, 2018, as conditional zoning/use permit 873128. *See* R.R. at 960a. Thereafter, on July 10, 2018, Owners entered into a purchase and sale agreement with Dock Street Residential L/Cal LLC (Developer) concerning the sale of Unit Three and portions of Unit Two (P&S Agreement).[3] *See* R.R. at 1211a & 1259a. The P&S Agreement also granted Developer the right to proceed in obtaining the necessary zoning permits and development approvals for the development of the entire Property. R.R. at 1212a & 1259a. Thereafter, on October 22, 2018, an authorized officer of Owners executed a sworn affidavit that was provided to L&I stating, *inter alia*, that Owners had granted to Developer all legal rights to pursue, obtain, and/or defend all permits and approvals necessary or desirable to develop the Property. R.R. at 587a & 1259a.

On December 3, 2018, L&I issued a Conditional Zoning Permit (Permit) to Developer that authorized the construction of a 31-story tower addition to the existing development on the Property, containing, among other amenities, 272

---

parking for Unit Three, whereas Unit Two-B is intended to serve Unit One. *See* R.R. at 122a & 278a.

[3] The parties amended the P&S Agreement on September 5, 10, and 12, 2018.

residential units. *See* Trial Court Opinion at 2; ZBA Decision at 2, F.F. 7. Specifically, the Permit granted conditional approval for:

> the erection of an addition to an existing detached structure with a roof deck (at level 31). Size and location as shown on plans and application.
>
> Structure for use as visitor accommodations (previously approved) and multi-family household living (two hundred and seventy-two (272) dwelling units); roof deck accessory to residential use. Reconfiguration of parking located within the cellar to accommodate a new total of one [] hundred [] seventy-one (171) spaces (no change to ninety-seven (97) previously approved valet spaces). Parking to include eighteen (18) compact spaces, four (4) accessible spaces (including one (1) van accessible space), and four (4) electric vehicle parking spaces. An additional two (2) loading spaces are proposed for a total of four (4) loading spaces. A total of one[] hundred and thirty-one (131) Class 1A bicycle parking spaces proposed on an accessible route. No signs on this application.

R.R. at 272a.

Towers appealed the issuance of the Permit to the ZBA. *See* Trial Court Opinion at 2; ZBA Decision at 2-3, F.F. 8. Towers raised six challenges before the ZBA: (1) a conditional permit has already issued for the proposed project, precluding the issuance of a second conditional permit;[4] (2) the height of the proposed building exceeds heights permitted by the Philadelphia Zoning Code (Zoning Code); (3) the proposed development exceeds the Property's maximum permitted occupied area; (4) the proposed development is inconsistent with the

---

[4] Developer abandoned permit 873128 following L&I's issuance in December 2018 of the Permit at issue herein. *See* R.R. at 334a-37a. This issue no longer forms a part of this appeal.

previously-issued variances; (5) the proposed development does not meet applicable parking requirements relating to reservoir spaces and minimum stall width; and (6) Developer did not establish its status as an equitable owner authorized to submit to L&I a permit application regarding the Property. *See* Trial Court Opinion at 2; ZBA Decision at 3, F.F. 8.

The ZBA conducted a hearing on the appeal on February 5, 2019, at which Towers presented the testimony of an L&I plans examiner and a land planning expert. *See* Trial Court Opinion at 2; ZBA Decision at 3 & 6-12, F.F. 9 & 32-70. At the conclusion of the hearing, the ZBA members in attendance voted unanimously to deny the appeal. *See* Trial Court Opinion at 2; ZBA Decision at 12, F.F. 74. Towers appealed to the trial court, which denied the appeal and affirmed the decision of the ZBA by order dated September 18, 2019.[5] *See* Trial Court Opinion at 2. This appeal followed.

Towers raises four claims on appeal to this Court.[6] First, Towers argues L&I should not have issued the Permit because the Property's condominium units should have been considered distinct lots for development and zoning purposes. *See* Towers' Brief at 17-33. Next, Towers claims that L&I erred in granting the Permit because the Permit is inconsistent with the terms of prior variances granted when the existing hotel was built on the Property. *See* Towers' Brief at 33-38. Third, Towers claims L&I erred in granting the Permit because Developer's proposed plan for the

---

[5] The trial court conducted a hearing on the appeal on September 12, 2019, at which it heard argument, but did not take further evidence. *See* Trial Court Opinion at 2.

[6] Where, as here, the parties presented no additional evidence in the trial court following the ZBA's decision, our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. *Renaissance Real Est. Holdings, L.P. v. City of Phila. Zoning Bd. of Adjustment*, 199 A.3d 977, 983 n.3 (Pa. Cmwlth. 2018).

5

hotel exceeds the occupied area allowances for the Property.  *See* Towers' Brief at 38-43.  Lastly, Towers alleges that Developer lacked standing to request the Permit. *See* Towers' Brief at 43-44.

**1.** *Standing*

We first review Towers' standing argument.  Interestingly, Towers makes clear in its brief before this Court that its argument is not that the ZBA lacked substantial evidence to find Developer had standing, but instead that the ZBA committed an error of law and abused its discretion in failing to require Developer to produce the entirety of the P&S Agreement for the Property in order to establish standing to request the Permit from L&I.  *See* Towers' Brief at 43-44.  Specifically, Towers argues that, by allowing an excerpted version of the P&S Agreement to establish Developer's standing, the ZBA denied Towers the opportunity to discover possible issues relating to the standing argument and other additional claims it might have made based on the P&S Agreement.  *See* Towers' Brief at 44.  We do not find merit in this argument.

Section 14-303(1)(c)(.1) of the Zoning Code permits both legal and equitable owners to submit permit applications to L&I.  *See* Zoning Code § 14-303(1)(c)(.1).  The Zoning Code expressly permits the filing of a zoning application by "[a]ny person or entity with written documentation of equitable ownership of that real property" or any entity "with signed authorization from the legal owner[.]" *Id.*; *see also Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 526 n.10 (Pa. Cmwlth. 2018).  In addition, contrary to Towers' assertions, this Court has noted that, "while Section 14-303(1) of the Zoning Code permits equitable owners with written documentation thereof to file zoning applications, there is no requirement

6

contained therein that such written documentation be submitted into evidence at the ZBA hearing." *Scott v. Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 358 C.D. 2015, filed Apr. 13, 2017),[7] slip op. at 14. Accordingly, the ZBA was free to make a determination of standing based on the evidence before it.

In the instant matter, Developer presented the ZBA documentation of equitable ownership in the form of copies of the cover sheets and signature sheets from the P&S Agreement. *See* Trial Court Opinion at 8; ZBA Decision at 13, Conclusions of Law (C.L.) 7; *see also* Excerpts of Purchase and Agreement between Property's Legal Owner and Developer dated July 10, 2018, R.R. at 457a-60a; R.R. 1259a. Developer also provided a signed sworn affidavit providing that Developer had authorization to proceed with the permitting process from the legal owner. R.R. at 587a; Affidavit of Darren Anzalone dated October 22, 2018, R.R. at 1259a; *see* Trial Court Opinion at 8; ZBA Decision at 13, C.L. 8. Additionally, the Declaration of Condominium contains a provision that "[t]he Unit Three Owner has the right to construct its intended improvements without the need to obtain any further consents or approvals from the Condominium Association or other Unit Owners under the Declaration [of Condominium]."[8] R.R. at 122a. Further, L&I plans examiner Sarah Kaiser[9] testified at the hearing before the ZBA that, based on the documents provided by Developer, she determined that Developer possessed the authority to

---

[7] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court, issued after January 15, 2008, may be cited for their persuasive value.

[8] We note also that the Property's legal owner was represented by counsel at the hearing before the ZBA in this matter. *See* ZBA Decision at 3, F.F. 10.

[9] Kaiser has both a bachelor's and a master's degree in civil engineering and has been a plans examiner with L&I for almost seven years. *See* ZBA Decision at 6, F.F. 33. See also, ZBA Decision at 6-10, F.F. 32-59.

submit the application for the Permit. *See* ZBA Decision at 8-9, F.F. 48; *see also* R.R. at 587a. L&I and the ZBA both deemed this documentation and testimony sufficient to confer standing upon Developer to apply for the Permit as the equitable owner of the Property. *See* ZBA Decision at 13, C.L. 7-8. The trial court agreed, noting that the Zoning Code does not require Developer to produce the full P&S Agreement between Developer and the legal owner. *See* Trial Court Opinion at 9.

We cannot agree with the ZBA that the excerpts from the P&S Agreement proved Developer was an equitable owner of the entire Property so as to confer standing to request the Permit. While we do agree that the entirety of the P&S Agreement did not need to be admitted into evidence to establish equitable ownership of the Property, *see Scott*, slip op. at 14, we note that the submitted portions of the P&S Agreement illustrated, at best, Developer's equitable ownership in Unit Three and a portion of Unit Two, as opposed to the Property as a whole. *See* R.R. at 457a-60a. Because the proposed project is a development of the entire Property, and not just condominium Units Two and Three, Developer's equitable interest in Units Two and Three alone was inadequate to establish Developer's standing to request the necessary Permit. Notably, however, the excerpts of the P&S Agreement provide that Developer had authority to develop the project at its discretion. *See* R.R. at 1212a. Specifically, the Agreement states:

> (a) Upon [Developer's] receipt from Seller of Seller's Conditional Zoning Permit[10] and Civic Design Review Committee Referral Letter therefor, [Developer] shall proceed using good faith, commercially reasonable and diligent efforts to obtain the Zoning Permit and the

---

[10] The conditional zoning permit discussed in the P&S Agreement appears to be permit 873128, which L&I did not actually issue until August 9, 2018, after the June 10, 2018 date of the P&S Agreement. Developer later abandoned this permit upon the issuance of the Permit concerned herein. The P&S Agreement allows for a change of the project during the government approval process at Developer's discretion.

Development Approvals for the Project on or before the Zoning Permit Date, and shall submit all applications in [Developer's] name as the equitable owner of Unit Three. Seller shall continue to cooperate with [Developer] in such applications and any appeals related thereto in accordance with Section 6.6(b). For purposes of this Agreement, the **"Zoning Permit"** means a final and unappealable zoning and use registration permit issued by [L&I] for the Project (with no appeals pending and not subject to appeal). The Parties hereby acknowledge and agree that the Project may be changed and modified by [Developer] (in [Developer's] discretion) through the governmental approval process and may differ from the Project depicted in Seller's Zoning Submission (including a reduction of gross floor area below at 280,464 square feet).

R.R. at 1212a (emphasis added). Furthermore, the written sworn affidavit produced by Developer evidenced permission from the Owners of the Property, including the owners of condominium Units One and Two, to proceed with the proposed project without the need for further permissions or authorizations. The affidavit provides:

3. The Owners entered into a Purchase and Sale Agreement with Dock Street Residential L/Cal LLC ("LCOR Purchaser") concerning Unit Three, portions of Unit Two, and the right to develop the Property as approved by Conditional Zoning Permit No. 873128 on July 10, 2018 (as restated and amended on September 5, 2018, September 10, 2018, and September 12, 2018, the "Agreement").

4. Through the Agreement, the Owners granted to LCOR Purchaser, as the equitable owner of the Property, and its authorized agent(s), all legal rights to pursue, obtain, and/or defend all permits and approvals necessary or desirable to develop the Property as approved by Conditional Zoning Permit No. 873128.

9

R.R. at 1259a. L&I possessed this affidavit evidencing Developer's permission to develop the Property before it at the time it issued the Permit. We also note that L&I had before it the Declaration of Condominium, which gave Developer permission to construct its intended improvements without requiring further permission. *See* R.R. at 122a. Therefore, we concur with the ZBA that the documentation provided sufficed to confer standing on Developer in the underlying zoning application.

## 2. *The condominiums as distinct lots for zoning purposes*

Towers next argues that the ZBA erred in issuing the Permit because the condominium units are distinct lots for zoning purposes. *See* Towers' Brief at 17-33. Towers argues that the permitted floor area ratio (FAR) of the residential tower for the proposed building should have been calculated based on the square footage of the individual condominium parcel on which the proposed tower is to be located, and not on the entire lot that represents the Property as a whole. *See id.* We disagree.

The Zoning Code defines a "lot" as "[a] parcel of land consisting of a horizontal plane bounded by vertical planes that comprise its front, side, and rear lot lines, and that is intended or designed to be used, developed, or built upon as a unit." Zoning Code § 14-203(169). Under the Zoning Code, subdivision of a lot requires an application and subsequent approval by the City Planning Commission. *See* Zoning Code § 14-303(6)-(7). The division of a parcel into separate tax parcels does not subdivide for zoning purposes the lot on which the separate tax parcels have been

created.[11]  *See DiCicco v. City of Phila. Zoning Bd.* (Pa. Cmwlth., No. 2625 C.D. 2015, filed May 10, 2017);[12] *see also* Section 3106(c) of the Condominium Act, 68 Pa.C.S. § 3106(c) ("The creation of a condominium . . . out of an entire lot, parcel or tract of real estate which has previously received approval for land development or subdivision, . . . or the conveyance of units in the condominium, shall not, in and of itself, constitute a subdivision or land development, for the purposes of subdivision, land development or other laws, ordinances and regulations."); *Cunius v. Bd. of Assessment Appeals of Chester Cnty.*, 976 A.2d 635, 641 (Pa. Cmwlth. 2009) (noting that the creation of a condominium, while allowing the condominiums to be individually assessed for tax purposes, does not constitute a division of property for land development purposes).  Further, "[a] zoning, subdivision, building code or other real estate use law, ordinance or regulation may not prohibit the condominium form of ownership or impose any requirement upon a condominium which it would not impose upon a physically identical development under a different form of ownership."  68 Pa.C.S. § 3106(a); *see also Cunius*, 976 A.2d at 641 (noting that the purpose of Section 3106(c) of the Condominium Act, 68 Pa.C.S. § 3106(c), is to prevent the prohibition of and discrimination against a condominium form of ownership).

Here, L&I plans examiner Kaiser testified that the applicable zoning lot in this case is the entire Property, the "land found between Dock Street, 2nd Street,

---

[11] Towers concedes this point.  *See* Towers' Brief at 22 (citing 68 Pa.C.S. § 3106(c) and acknowledging that "simply creating a condominium does not mean new subdivisions have been created").

[12] *DiCicco* involved an attempt by a landowner to have a lot declared two separate properties based upon the fact that the lot had two separate tax parcel numbers.  The lot was identified as a single lot, conveyed by a single deed, with two tax parcels numbers, and a single-family home straddling the two tax parcels.  *DiCicco*, slip op. at 34-37.

11

Walnut Street and Front Street." ZBA Decision at 9, F.F. 47. Kaiser explained that condominiums that make up the Property are not relevant to a zoning review, and that L&I has never treated a single unit of a condominium complex as a discrete zoning lot. *See* ZBA Decision at 9, F.F. 48 & 50; *see also* R.R. at 565a & 596a. Further, the zoning records available to the ZBA showed: (1) the Property was recognized as a single zoning lot during the variance application process in 1985; (2) the single zoning lot identified was the land bordered by Dock Street, Front Street, South 2nd Street, and Walnut Street; and (3) there was no record of any subsequent subdivision of the Property or its lot lines. *See* ZBA Decision at 14, C.L. 13-14; *see also* R.R. at 37a-38a. The Permit itself treated the Property as a single lot, noting that the proposed project represented an addition to and reconfiguration of existing Property structures and features. *See* R.R. at 272a.

Towers improperly relies on *Frank N. Shaffer Family Limited Partnership v. Zoning Hearing Board of Chanceford Township*, 964 A.2d 23, 26 (Pa. Cmwlth. 2008), for the proposition that new structures built on formerly vacant condominium units require standalone zoning compliance approval. *See* Towers' Brief at 18-24. *Shaffer* involved the division of a parcel of land into distinct planned community units under the Uniform Planned Community Act,[13] which division surpassed mere allocation of ownership interests and amounted to a subdivision requiring approval. *See Shaffer*, 964 A.2d at 28. The units were then conveyed without approval. *Id.* In contrast, in the case *sub judice*, the Property's lot lines were not altered or redrawn. No completely new structure is contemplated. Instead, the Property ownership has been transferred to a condominium and L&I has issued a permit that approves *an addition* to an existing structure. *Shaffer* is accordingly

---

[13] 68 Pa.C.S. §§ 5101-5414.

inapposite. Rather, applicable statutory and case law indicates that the Property's condominium form of ownership did not create three separate parcels for zoning purposes.[14] *DiCicco*; 68 Pa.C.S. § 3106(c). As such, the ZBA rightly concluded that "L&I acted properly in treating the Property as a single zoning lot, calculating FAR based on the site in its entirety, and finding the proposed development did not exceed permitted square footage and was permitted by right." ZBA Decision at 15, C.L. 21.

### 3. *Inconsistencies with prior variances*

Towers next alleges that the ZBA erred because the Permit is inconsistent with the terms of the zoning variances granted during the construction of the existing hotel on the Property in 1985. *See* Towers' Brief at 33-38. We disagree.

The Zoning Code provides that L&I shall have the authority to issue zoning permits and approvals:

> [r]egardless of whether the existing lot, structure, or use is currently the subject of a variance, permit, certificate, special exception, or proviso issued by the [ZBA], *provided that the application shall be consistent with the terms of the current Zoning Code and that variance, permit, certificate, special exception, or proviso*. If the application is not consistent with or would require a modification of the terms of a variance, permit, certificate, special exception or proviso approved by the [ZBA], or otherwise not consistent with this Zoning Code, the

---

[14] We note that Towers conceded in its reply brief in the trial court that, in the absence of the Declaration of Condominium, Society Hill Hotel XLI Owner LLC, the owner of the entire Property, would have been able to build the proposed addition. *See* Towers' Reply Brief at 10, R.R. at 1360a.

application shall be denied and referred to the [ZBA] for action pursuant to the applicable section.

Zoning Code § 14-303(6)(a)(.2) (emphasis added). Further, while the Zoning Code empowers the ZBA to impose conditions and/or provisos on variances when granted, such conditions or provisos must "be listed in or attached to the approval document and expressly identified as a condition." Zoning Code § 14-303(9)(a)-(b).

The instant matter involves variances issued to the Property in 1985 that concerned (1) the size of parking spaces and (2) the ingress/egress from the parking garage. Kaiser testified that she was aware of the Property's 1985 parking space variance. *See* ZBA Decision at 6-7, F.F. 34. Kaiser explained that the prior variance concerned the size, not the number, of Property parking spaces, and that a reduction in the number of parking spaces on the Property would, therefore, not be considered a modification requiring a new variance. *See* ZBA Decision at 6-7, F.F. 34, 36 & 38. Kaiser testified that the parking spaces proposed for the new residential use at the Property are Zoning Code compliant in terms of number and dimensions. *See* ZBA Decision at 10, F.F. 57. Additionally, Kaiser acknowledged that, had the 1985 variance included a condition or proviso stating that the number of parking spaces could not be reduced, then Developer's plan to reduce the number of spaces would have indeed been considered a modification. *See* ZBA Decision at 7-8, F.F. 39. Kaiser testified, however, that the 1985 variance included no such condition or proviso. *See* ZBA Decision at 8, F.F. 39.

The ZBA found that, "[w]hile the current proposal eliminates some of the previously approved spaces, no change is proposed to the dimensions of the spaces that will remain." ZBA Decision at 17, C.L. 37. Additionally, the ZBA noted that "[t]he previously approved ingress/egress will likewise remain unchanged."

14

ZBA Decision at 17, C.L. 37.  Ultimately, the ZBA determined that Developer's proposed reduction of the number of parking spaces was not inconsistent with the Property's previously granted variances.  The ZBA concluded that

> [i]n the absence of an expressly stated proviso requiring a specific number of parking spaces, [L&I] had no basis for concluding such a condition existed.  It could not go beyond the four corners of the approval and impose a requirement based on its reading of the arguments presented at a hearing more than thirty years ago.

ZBA Decision at 17, C.L. 41.

> The trial court agreed with the ZBA, noting as follows:

> The ZBA in 1985 granted variances allowing for under-sized parking spaces and deviation from the [Zoning] Code's vehicular ingress/egress requirements.  It did not grant relief from the number of parking spaces required, or impose a proviso or condition requiring a particular number of parking spaces.  The [Permit a]pplication seeks to reduce the number of parking spaces currently at the Property, but adheres to the parking space dimensions proscribed by the 1985 variance.  [Towers] insist[s] that reducing the number of parking spaces is inconsistent with the 1985 variance because the variances were allowed for the purpose of accommodating the 264 valet parking spaces.  [Towers'] argument is based solely on [its] speculations as to the decision making of the 1985 ZBA.  If the ZBA did indeed intend to condition [its] grant of variances on a particular number of parking spaces at the Property, [it] failed to include such a proviso in [its] Notice of Decision.  In the absence of an expressly stated proviso requiring a specific number of parking spaces, [L&I] had no basis for concluding such a condition existed.  The [Permit] application is consistent with the express terms of the 1985 variance, therefore the ZBA did not commit an error of law or abuse of discretion.

15

Trial Court Opinion at 6 (internal citations and quotation marks omitted).

We agree with the trial court and the ZBA that in the absence of an express, written condition or proviso regarding the number of parking spaces required at the Property, a reduction in the number, but not the dimensions, of the parking spaces is not inconsistent with the previous variance and is consistent with current zoning requirements. *See* Zoning Code § 14-303(6)(a)(.2). The Permit is likewise consistent with the previous variance's ingress/egress requirements for the parking garage, which remain unchanged. Thus, we find that Towers' argument regarding the alleged inconsistency of the Permit with the previous variances lacks merit.

## 4. *Occupied area allowances*

Lastly, Towers argues that the proposed addition exceeds the maximum occupied area permitted by the Zoning Code. *See* Towers' Brief at 38-43. Towers argues that L&I failed to include all architectural recesses and setbacks in its occupied area calculations and that, had L&I done so, the occupied area of the proposed hotel would have exceeded the permissible 80% occupied area of the Property and therefore required a variance.[15] *See id.*

The Zoning Code defines "occupied area" as:

> The total of the areas of all buildings on the lot. The area
> of each building is the area of a horizontal section of such
> building on any floor at or above ground level taken at its

---

[15] We note that this argument assumes, *arguendo*, that the Property consists of a single lot. *See* Towers' Brief at 42.

16

greatest outside dimensions, including all structures, except fences and decks. Architectural recesses or other portions of a building wall *at street level* that are set back from the street line to create building wall articulation shall count as occupied area.

Zoning Code § 14-203(12) (emphasis added). Additionally, the Zoning Code defines "architectural recesses" as:

Portions of a building wall *at street level* that are set back from the street line so as to create articulation of the building wall and/or to provide space for windows or doors.

Zoning Code § 14-203(24) (emphasis added). Further, regarding the rules of measurement for building "Façade Articulation Areas," the Zoning Code provides:

The area of a façade articulation feature shall be measured by determining a minimum imaginary rectangle parallel to the building façade that completely encloses the feature.

Zoning Code § 14-202(3.1).

The recesses/setbacks at issue run from the street level up to the sky. *See* R.R. at 291a. At the hearing before the ZBA, George Ritter[16] testified on Towers' behalf as a land planning expert regarding the occupied areas of the proposed hotel. *See* ZBA Decision at 10-11, F.F. 60-66. Ritter opined that the calculation of the occupied area of the proposed hotel on the Property should have included architectural recesses or other portions of the proposed building wall at street level. *See* ZBA Decision at 11, F.F. 64. Ritter explained that, unlike an

---

[16] Ritter is a licensed professional planner with a master's degree in regional planning who has testified before the ZBA as an expert multiple times in the past. *See* ZBA Decision at 10, F.F. 60. The ZBA accepted Ritter as an expert in land planning in this matter. *See* ZBA Decision at 10, F.F. 61.

17

architectural recess, a building setback is a recess that goes straight up to the sky without being covered. *See* ZBA Decision at 11, F.F. 65. Ritter opined, however, that all building recesses, should be included in the occupied area of a building, whether those recesses extend up all levels of the building or exist only at street level. *See* ZBA Decision at 11, F.F. 66. Kaiser, on the other hand, testified that building setbacks that extend from ground level all the way up the building to the sky are setbacks and properly considered open areas, not occupied areas. *See* ZBA Decision at 9, F.F. 54; R.R. at 602a.

This issue turns on the interpretation of the Zoning Code's definition of "occupied area." As the ZBA noted:

> [Towers] read[s] the final sentence of the definition [of "occupied area"] as requiring any portion of a building set back [sic] from the street line to be counted as occupied area – regardless of whether the set back [sic] is limited to the ground floor or exists through all levels, leaving the recessed area open to the sky. L&I, by contrast, interprets the [Zoning] Code language to require only those recesses that exist solely at ground level to be counted as occupied area.

ZBA Decision at 15, C.L. 24 (original emphasis omitted). The ZBA, through Kaiser, found that L&I's interpretation that building setbacks are those that extend from a building's ground level up to the open sky, unlike architectural recesses that exist only at the street level, was both reasonable and entitled to deference. *See* ZBA Decision at 15-16, C.L. 25-27. Further, the ZBA noted that the Zoning Code's rules of measurement for "Façade Articulation Areas" "assumes that a façade articulation will be a limited, identifiable recess in the building wall, not a set back [sic] area extending from the ground level and open to the sky." ZBA Decision at 16, C.L. 27.

18

Accordingly, the ZBA rejected Towers' argument that L&I improperly calculated the occupied area of the proposed hotel project. *See* ZBA Decision at 16, C.L. 28.

L&I's interpretation of the occupied area calculation in this matter is consistent with the Zoning Code's definitions of "occupied area" and "architectural recess," as well as the Zoning Code's directives for measuring façade articulation areas. *See* Zoning Code §§ 14-202(3.1), 14-203(12) & 14-203(24). These definitions support the conclusion that an architectural recess is one that exists at the street level only and that a building setback is a recessed area that is open to the sky. As such, the setbacks that are open to the sky are not to be calculated as occupied area. Further, L&I's interpretation of the Zoning Code, as adopted by the ZBA, is entitled to deference by reviewing courts. *See Azoulay v. Phila. Zoning Bd. of Adjustment*, 194 A.3d 241, 249 (Pa. Cmwlth. 2018) ("An administrative agency's interpretation of the statute it is charged to administer is entitled to deference on appellate review absent fraud, bad faith, abuse of discretion or clearly arbitrary action."); *see also Turchi v. Phila. Bd. of License & Inspection Review*, 20 A.3d 586, 591 (Pa. Cmwlth. 2011) (stating an agency's construction of its own regulations is entitled to deference).

In light of the foregoing, we find no error in the ZBA's determination regarding the occupied area calculation in this matter nor in its conclusions that: the Developer had standing to apply for the Permit; the condominiums are not distinct lots; and the Permit is not inconsistent with the terms of prior zoning variances for the Property. Accordingly, we affirm the order of the trial court affirming the ZBA.

_____
CHRISTINE FIZZANO CANNON, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Society Hill Towers Owners : 
Association, Bruce Holberg, : 
Ben Avicolli, and Maggie Shultz, : 
             Appellants : 
 : 
       v. : 
 : 
City of Philadelphia and Philadelphia : 
Zoning Board of Adjustment, and Dock : 
Street Residential L/CAL LLC, Society : 
Hill Hotel XLI Owner LLC, Society : 
Hill Parking Owner LLC, and :   No. 1432 C.D. 2019
Society Hill Land Owner LLC : 

## O R D E R

AND NOW, this 18th of December, 2020, the September 18, 2019 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge